## GAZZAM v. POYNTZ.

1. A deed of assignment made by a debtor conveying his property to a trustee, with power to collect and sell and apply the proceeds to the payment of certain creditors, first, those named in schedule B. according to the order in which they were set down ; second, those enumerated in schedule C. *pari passu*, and without priority or partiality, and lastly all other persons having legal demands against the debtor—and also giving to the trustee the power and discretion of departing from such order and enumeration, if by such departure any compromise or settlement could be effected, advantageous to the debtor or his creditors—declared void, because made with the intent to delay, hinder and defraud creditors—and that such intent was apparent on the deed.

2. A deed of assignment can be sustained, only where the property conveyed by the deed is *bona fide* devoted to the payment of the creditors, without stipulating for any benefit to the debtor, and where the equitable interests of the creditors are fixed and determined by the assignment itself.

ERROR to the Chancery Court of Mobile.

This was a bill in Chancery, filed by the defendants in error to set aside a deed of assignment made by Audley H. Gazzam.

The complainants alledge that they are judgment creditors of A. H. Gazzam, having obtained judgment against him for $7,568, besides costs—that an execution issued thereon to the sheriff of Mobile county, which he returned no property found. That another execution has issued and been levied on certain lands of A. H. Gazzam, sufficient in value to satisfy the judgments—that Gazzam, with the view of delaying and hindering his creditors, on the 4th January, 1840, made a deed of assignment to one Charles W. Gazzam, his brother, including the lands so levied on, who has pretended to manage and control them, but has held them in fact for the sole use and benefit of his brother—that the trustee has not offered the property for sale under the powers in the deed, nor has he gone on to close the affairs of the trust, but has used the estate and interest for the sole purpose of preventing the creditors of A. H. Gazzam from collecting their debts by due course of law.

The bill further charges that the trustee, from time to time, has conveyed large tracts of land, although the special trust and preferances have not been performed—that he has made divers settlements with the creditors of Audley, giving them in payment lands embraced in the deed, although their claims are not set forth in the same, nor had they obtained any judgment, or acquired any *lien* thereon—that this was done by the counsel and with the advice of Audley, and because exhorbitant prices were obtained for the lands—and that the trustee refuses to settle any debts unless for lands at such prices.

The bill also charges a secret trust to exist between the trustee and his brother, and that the former allows the latter a support and maintenance out of the trust property, and permits him, without rent, to occupy the dwelling house, &c. That all the property of Audley is conveyed by the deed which is exhibited. and prays that the same be declared fraudulent and void, and that the property be held subject to the payment of the judgment, &c.

The deed of assignment conveys to the trustee a large amount of real and personal property, debts, &c. "upon the trust that with all speed convenient and compatible with the interest and security of all parties beneficially interested, to sell, dispose of and convey, all the real and personal estate and property hereby conveyed and assigned, or such part and parcel or portion thereof as may be necessary, at such prices and on such terms and conditions as the said party of the second part, his heirs, &c. may deem most expedient, and to collect in the discretion of the said party of the second part, the said debts or sums of money, and all other the premises hereby assigned —and out of the trust moneys which shall come into his hands, in the first place reimburse himself all costs, charges and expenses whatsoever, which he may sustain or be put to in and about the execution of the trust hereby reposed in him, or otherwise relating thereto—and, in the second place, out of the residue of the said trust monies, as the same may be from time to time collected, to pay and satisfy the several notes and evidences of debt set down and enumerated in schedule of my debts hereto annexed, marked B. paying, satisfying and discharging the same in the precise order in which they are herein set down and numbered, not meaning, however, hereby to

deprive my said assignee, the said party of the second part, of the power and discretion of departing from the said order and enumeration, if by such departure any compromise or settlement may be effected advantageous to the interest of the said party of the first part and his creditors—and in like manner, and at the same time to pay and satisfy any interest that has, or may, accrue on said notes at the payment thereof—and in the third place, out of the residue of the said trust monies, after the aforementioned payment of principal and interest, to pay and satisfy, as far as the said residue may suffice, *pari passu*, and without partiality, preference or priority, the several debts set down and enumerated in schedule C. hereto annexed—and in the fourth place, out of the said trust monies, after the payment of the debts last mentioned and enumerated in schedule C. to pay and satisfy, as far as the residue may suffice, all other debts, demands and responsibilities, legally enforceable against me, the said party of the first part    Provided, nevertheless, and it is hereby declared and agreed, that the said party of the second part, may use and employ such agents as he may think proper, &c.—and it is further declared to be the meaning and intention of these presents, that notwithstanding any thing which may be herein declared or appointed, he, the said party of the second part may, in his discretion, pay as it shall become necessary and convenient any interest or curtailments accrued, accruing or to accrue on any note or notes of the said party of the first part, enumerated in this assignment by the schedule annexed, due in any Bank or Banks, on any renewal thereof; and further, that the said party of the second part, may, from time to time, and whenever it shall be for the mutual interest of the several parties beneficially interested, to depart from the order of assignment hereinbefore appointed and directed, by settling in full or in part, by compromie or otherwise, any of the debts or liabilities specified in the schedule hereto annexed and for which I am legally liable and chargeable."

The several schedules are annexed of debts due to and from A. H. Gazzam, the latter amounting to between fifty-five and sixty thousand dollars.

Audley H. Gazzam denies all fraudulent design in making the deed, but that the intention was to provide *bona fide* for all his creditors—that the proviso in the deed authorizing the

Gazzam v. Poyntz.

trustee to depart from the order in which the claims were enumerated in the schedule, was designed to enable the trustee to preserve the estate, as in cases where debts secured by mortgage on real estate, which would not bring its value if sold under a decree of foreclosure and that the power was not intended to defeat the rights of any of the creditors. The other charges in the bill impugning the fairness of the deed or the conduct of the trustee are all denied. He also denies that he has been supported by or has received any thing from the trustee since his acceptance of the trust.

C. W. Gazzam, the trustee, denies that the deed was made to delay or defraud creditors, within his knowledge or belief, but the intention was to pay all the debts of A. H. Gazzam, and that all his acts under the deed have been to accomplish that object. That from the date of the deed up to the present time he has constantly offered the property for sale, and has done his utmost to dispose of it as quickly and to the best interest of all parties concerned, as possible. He denies that he has used the property in such a manner as to defeat the just rights of creditors. That for the last four or five years, real estate, of which the assigned property principally consists, has had at public auction, or at forced sales, little or no value, and that if he had offered the estate in large bodies, at public sale, so as to satisfy, as far as might be, the debts recited in the assignment he believes the entire assigned debt would not have satisfied one-fourth of the claims. That to preserve the estate to the creditors he has paid large sums in discharge of mortgages. He denies having conveyed large parcels of land in disregard of the preferences created by the deed, and whether the powers vested in him by the deed authorized him to make such preferences, he submits to the Court. He denies that he has made settlements with the creditors by giving them lands at exorbitant prices, and has made but two offers of this description, one of which to complainants, and the price put on the land was what he truly believed to be its value, and lower than the adjacent lands were held at, and that the offer was made at the suggestion of the complainant's solicitors. He thinks the assigned property, under judicious management, will pay all the debts, but if the estate is wound up suddenly and hastily, it will be largely insolvent—that he has proceeded

48

with the sales with as much despatch as is consistent with the interest of the creditors—he denies all fraud or collusion with the maker of the deed, and renders a full account of his acts under the deed.

The parties went to trial by consent on bill and answer, and the Chancellor declared the deed fraudulent, and granted the relief sought by the bill. From this decree this writ of error is prosecuted.

DUNN & LESESNE and DARGAN, for plaintiffs in error contended that the intent of the deed was honest, and that the powers contained in it could not be exercised to a dishonest purpose without violating the terms of the deed, and that this is the only criterion. [4 Mason, 220; 14 Johns. 458; 9 Porter, 571; 5 Pickering, 32; 2 Conn. 633; 13 Conn. 391; 6 Greenleaf, 395.]

That the cases relied on by the other side, from 7th Paige, 570, and 11th Wendell, 240, were not applicable to this case, but if so considered, they maintained they were not correctly decided, and were in hostility with the cases cited from 5th Pick. and 2d Conn.

CAMPBELL, contra. Neither the detail of explanatory circumstances nor the denial of fraud in the answer, will relieve the parties to an assignment, which contains illegal provisions, when assailed by the dissenting creditors. [1 Ed. Ch. 256; 11 Wendell S. C. 240 ]

The assignment in this case places the property of the debtor in the hands of a third person, giving to him the privilege of retaining it for an indefinite period, to enable him to compound with the creditors of the assignor. Under the powers conferred by this deed, the assignee can set at defiance the creditors of the grantor. He must be allowed to fulfill the trusts, and unless the control and disposition is allowed to him he cannot do so. Hence law and chancery must both await his decision. A law giver is constituted by the act of the debtor more powerful than the supreme power of the State, and the right of the creditor to satisfaction out of the debtor's property postponed indefinitely. [11 Wend. 200; 14 Johns. 258; 4 Paige 24;

1 Iredell, 490; 12 S. & R. 198; 1 Iredell, 180; 7 Paige, 568.]

The cases cited from Connecticut are unsound. A debtor has no right to place his property in such a situation that it can be used for any purpose but to pay his debts. They have a claim to his property unconditionally, and in the state in which it is at the date of the assignment. To make such a stipulation good, the creditor must assent to it. [31 Eng. C. L. R. 254.]

ORMOND, J.—In the case of Ashurst v. Martin, [9 Porter 566,] we sustained an assignment made by one in failing circumstances, by the terms of which a release was exacted from all the creditors who came in under the deed within a time stipulated. That decision was reluctantly made, under the influence of a former decision of this Court, which had been long acquiesced in, but we then avowed our determination not to go beyond the letter of that case. It was then considered as settled law, "that a debtor may convey his property in trust to pay one or more creditors in full, or to pay his creditors in unequal portions, provided he relinquishes all control over it, and stipulates for no pecuniary benefit to himself, but fairly and *bona fide* appropriates it to the payment of his debts." Such is still our opinion, and to that test we will subject the assignment in this case.

The parties having gone to trial on bill and answer by consent, the latter, according to the rule adopted by this Court for the regulation of proceedings in the Courts of Chancery, must be considered as true in all its parts; and as the answers of both defendants deny all intentional fraud, and insist that those portions of the deed of assignment now objected to were introduced in it for the sole purpose of enabling the trustee, by a judicious sale of the property, to pay all the creditors, the question is one of dry law, upon the construction of the deed.

The property conveyed by the deed consists of choses in action and other personal property, lands in the city of Mobile, and a large amount of land situated in other counties, which was wild or unimproved, and which the trustee was authorized with all speed, convenient and compatible with the interest of all parties beneficially interested therein, to sell, dispose of

and convey at such prices and on such terms or conditions as he should deem expedient and with the proceeds and the debts collected, after paying expenses, &c. to discharge the debts enumerated in schedule B. in the precise order in which they are there enumerated, giving to the trustee a discretion to depart from the order of enumeration, "*if by such departure any compromise or settlement may be effected advantageous to the interest of the party of the first part and his creditors.*" The second class of creditors enumerated in schedule C. are to be paid *pari passu;* and lastly, all other legal demands. The power of the trustee is finally stated thus: "And further, that the said party of the second part may from time to time, and whenever it shall be for the mutual interest of the several parties beneficially interested herein, depart from the order of payment hereinbefore appointed and directed, by settling in full, or in part, by compromise or otherwise, any of the debts or liabilities specified in the schedule hereto annexed, or for which I am legally liable and chargeable."

We are of opinion with the Chancellor, that this deed cannot be supported—that there is an intent apparent on its face that it was made with the design to hinder and delay creditors in the collection of their debts.

A deed of assignment, to be valid, must distinctly declare the uses; and one reserving to the grantor the right to declare them subsequently, would be void. The reason of this is apparent. Whilst the debtor retains his property in his hands, subject to the legal pursuit of his creditors, he may compound with them and obtain an abatement of their claims. The parties meet on equal ground, and the creditor may either assent to the debtor's proposition or take his chance by suit. But if the debtor could, by an assignment, place his property beyond the reach of his creditors, by suit, and be at the same time permitted to compromise with them, or offer terms of compromise, the odds would be fearfully in his favor. The making of an assignment with preferences, is an admission on the part of the debtor, of inability to pay all his debts, or at least renders such payment doubtful; and those who are placed in the class of those who are to be paid *pari passu,* the true meaning of which generally proves to be not to be paid at all, naturally feel alarmed for the safety of their debts, and if the debtor

through his trustee, who is a person usually not very hostile to his interests, can appeal to their fears and offer them the certainty of receiving a portion of their debt instead of the doubtful provision made for them in the deed for any portion of it, he would be enabled to exercise a control over them which few could resist. Even the preference given to some of the creditors would be an illusion, and they would be merely placed on the preferred list to hold out inducements to those whose chance of payment, from the position assigned them, being doubtful, if not desperate, to abate something of their demands, and thus make it, in the language of the deed, "advantageous to the interest of the *party of the first part* and his creditors, that a compromise or settlement should be effected." Such a provision, if tolerated, would enable a debtor to set his creditors at defiance, and compel them to bid against each other for his favors, and would be virtually vesting him with powers which no one would suppose he could in terms reserve to himself in the deed of assignment.

In the impressive language of Judge Gaston, in Haffner v. Irwin, [1 Iredell, 490,] "It is enough, perhaps more than enough, for human infirmity, that the debtor shall be allowed, under these distressing circumstances, to select, according to his unbribed judgment, among his creditors for those who merit a preference, and to make a simple and unconditional appropriation of his property to the payment of their claims. But to allow him to negotiate for terms with them—to seek out those who will be most favorable to him, either in the way of profit or commerce, direct or indirect—to stipulate openly or covertly with regard to the property conveyed, other than its appropriation to the purposes of the conveyance—would be injurious to the best interests of the community."

In the case of Barnum v. Hampstead, [7th Paige, 568,] which was an assignment by a debtor giving preference to some of his creditors, but giving to the trustee a *discretion* to discharge certain claims against the assignor in preference to the preferred debts.

The Chancellor held that this provision rendered the deed void, upon the ground that an assignment which places any of the creditors in the power of the debtor, or his assignee, must

have the effect to delay or hinder creditors in the collection of their debts. [See also the opinion of Mr. J. Sutherland, in Grover v. Wakeman, 11 Wendell, 203.]

We have been referred particularly to the case of De Forest v. Bacon, [2 Conn. 633,] as supporting the view taken by the counsel for the plaintiff in error. By the deed in that case, the trustees were empowered to continue a manufactory till certain raw materials were worked up, and to purchase any necessary articles for that purpose. The Court held this provision did not *per se* render the conveyance void. We are not now called on to say what discretion may be vested in the trustee in the use or sale of the property—our concern at this time is with the *avails* of the property when sold, and whether the trustee can be invested with a discretionary power over it. So in the case of Ashurst v. Martin, [9th Porter, 576,] we held that it did not invalidate the deed because the trustee was invested with a discretionary power as to the mode and manner of settling the trust property. But that question is totally distinct from the present inquiry.

As stated in the preceding part of this opinion, an assignment by a debtor can only be sustained where the property conveyed by the deed is, by its terms, fairly and *bona fide* devoted to the payment of the creditors, without stipulating for any benefit to the debtor, and where the equitable interest of the creditors are fixed and determined by the assignment itself. We have attempted to show that the assignment in this case is not of that character. In its results, so far is it from devoting the assigned property to the payment of the creditors, and creating in their favour direct and absolute equitable interests, that no certain interests vests in any creditor; but every thing as it regards priority of payment is referred to the discretion of the trustee, who is distinctly admonished in the deed itself to have regard in his settlements and compromises to the interest of *" the party of the first part."* Such a conveyance is in open hostility with the statute of frauds; its direct and necessary tendency is to hinder and delay creditors of their just and lawful actions, and is therefore fraudulent and void—the *intention* being apparent in the deed itself.

We are fully satisfied that the conclusion here attained, is in

accordance with established principle, as ascertained by the adjudged cases, and that the decision is demanded by the best interests of the community.

Let the decree of the Chancellor be affirmed.