# A. POPE & SON, ET ALS. v. WILSON, ET ALS.

1. One, uncmbarrassed, may make what disposition he pleases of his property; therefore a deed of trust, or mortgage, which does not show upon its face that it was made in contemplation of insolvency, or that there are other creditors who may be prejudiced by it, cannot be considered fraudulent *per se.*

2. To justify a Court in inferring that a deed was made with fraudulent intentions, where no fraud in fact is proved, two things at least must concur—there must be creditors known to the parties who may by the provisions of the deed be delay. ed, or hindered, in the collection of their debts, and the necessary consequence of the deed, must be, to produce such delay, or hinderance.

3. When a deed of trust, fairly made, becomes, by subsequent events, oppressive, or injurious, to other creditors, although such a condition of things would not affect the deed, which was valid at its inception, yet a Court of Chancery would direct the trust to be executed immediately, and after satisfying the purposes of the trust, pay over the residue to the other creditors.

Error to the Circuit Court of Lowndes.

THE bill was filed by the plaintiff in error, Wilson, as trustee in a deed made by William J. Alexander, to secure the payment of a debt to John Irwin. Pope and Son, having obtained judgment against Alexander, and levied their execution on a portion of the slaves conveyed by the deed, and Desha, Sheppard & Co. having also attached certain of the slaves, for a debt due them from Alexander, the complainant filed his bill for an injunction. The deed, which is made an exhibit to the bill, was executed on the 4th February, 1841, by which Alexander conveys to the trustee, a tract of land, and a number of slaves, upon the following conditions: "Whereas, the said Alexander hath borrowed from John Irwin, of the county of Mecklenburg, the sum of twenty-four thousand five hundred dollars, to be paid in five years, from the 1st March, 1841, and it being understood, and agreed, by the said Irwin, and the said Alexander, that the net proceeds arising from said plantation and negroes, shall be applied, on or before the 1st of March, in each and every year thereafter, until the close of said term of five years, towards the payment and discharge of the said

sum, and the annual interest thereon. Now, if the proceeds so arising, shall not be sufficient for that purpose, and the aforesaid debt and interest shall not otherwise be discharged, then it shall be the duty of the said Wilson, after due notice and advertisement, to expose so much of said property as may be necessary to discharge said debt, or any portion thereof that may be then due, at public sale, for cash, or otherwise, as may be deemed expedient. And in case the said debt shall be discharged by the proceeds, or otherwise, then, the said Wilson doth contract to re-convey, &c. And it is further understood, and agreed, that the said Alexander is to remain in the possession of the above property, and to have the management thereof, the more effectually to discharge the purposes of this conveyance," &c.

On the 21st March, 1842, another deed was executed between the same parties, explanatory of the former, which, after reciting its material provisions, proceeds : " Now, therefore, to declare more explicitly the said intention, be it remembered, that the said W. J. Alexander, by this indenture, for and in consideration of five dollars, in hand paid, by the said Wilson, hereby conveys to him, in trust, the several crops hereafter to be produced upon the plantation, and by the negroes conveyed by the said before mentioned deed of trust, until the debt due to the said Irwin is entirely discharged, to be applied on or before the 1st of March, in each and every year; first deducting all expenses attending the said farm and plantation. And this conveyance, is not intended to interfere with the provisions of the deed heretofore made, but to confirm and explain the same." The deed then conveys to the trustee all the horses, cattle, hogs, plantation tools, and stock of every kind, not conveyed by the former deed.

In the month of March, 1841, Alexander also executed a deed to one Thomas C. Evans, in trust, to secure a debt due to James Martin, by which deed all the property conveyed by the first deed, was conveyed in trust to pay the debt due to Martin, subject to the previous conveyance to Wilson, for the benefit of Irwin. These deeds were all recorded.

Pope & Son, and Desha, Sheppard & Co., answer the bill, and charge fraud in fact, and insist that the deed is fraudulent on its face. Martin also answered the bill, and filed a cross

bill for the protection of his interest. Testimony was taken on both sides, and the cause was tried on the bill, answers, and proof.

The Chancellor, considering that the deed was not fraudulent, but fair and *bona fide*, decreed that sale be made of the property for the payment of the instalments then due, and that the trust stand as a security for the residue. That the trust in favor of Martin, should stand as a security for his debt after discharging the debt due Irwin, and that the execution and attachments against the property be perpetually enjoined.

From this decree this writ is prosecuted.

Hopkins and Dargan for the plaintiff in error, insisted—

1. That the bill was multifarious because there was no community of interest between the defendants.

2. That the creditors had the right to sell the possessory interest of the mortgagor, and that this right could not be restrained in equity.

3. That the deed was void upon its face, because it reserved a substantial benefit to the grantor, in the control and management of the property. From its tendency to injure the other creditors, by the power given to the grantor over the avails of the property. That the object of the deed was not to devote the property to sale, that from the proceeds the debt to Irwin might be paid, but to prevent a sale long enough to enable the debtor, by the use of the property, to pay the debt. That if it could be thus tied up for five years, it might be for any longer period, and thus give the debtor the use of his property in defiance of all but the preferred creditor.

They also insisted that the deed in favor of Martin, being subject to, and recognizing the previous deed, must abide its fate.

In support of these propositions they cited, 4 Ala. Rep. 374; 11 Wendell, 200; 31 Eng. C. L. 254; 14 Johns. 464; 1 Iredell, 180, 490; 4 Dallas, 88, 90; 5 Porter, 182; 12 S. & R. 198.

Thos. Williams, contra.

The Court declined delivering any opinion in the cause, intimating that they considered the case to be covered by the decision in Elmes v. Sutherland, *supra*.

At the January term, 1845, the cause was reargued.

HOPKINS, for plaintiff in error.

THOS. WILLIAMS, contra.

ORMOND, J.—This cause was argued at the last term, and held under advisement. No opinion was delivered at this term, because we considered the case to be covered by the decision pronounced at the present term, in the case of Elmes v. Sutherland.

The argument at the present term, has been made both upon the deed itself, and as considered in connection with the testimony.

In the case of Elmes v. Sutherland, it was held, that a trust deed made by a debtor to secure the payment of a debt, and postponing the payment of the debt to a period subsequent to the time when it fell due, reserving to the grantor the possession and use of the property conveyed, until that period, was not materially different from a mortgage made under the same circumstances—and, that if it did not appear in the deed, that the debtor was in failing circumstances, the stipulation that he should retain the possession, and use of the property, would not *per se*, make the deed void. Further, that, as by the terms of the deed, the payment of the debt secured by it, was postponed to a period beyond its maturity, the assent of a creditor, nòt a party to it, would not be presumed, and that until he did assent, the deed gave to the trustee a mere power revocable by the debtor.

At the first hearing of this cause, the argument of the counsel for the plaintiff in error, was mainly directed to show that this deed was void upon its face, as showing an intent to hinder and delay creditors. The deed discloses, that Alexander was indebted to Irwin in the sum of twenty-four thousand five hundred dollars, payable in five years; that to secure the payment of this money, he conveyed to the trustee named in the deed, certain lands and slaves, the net proceeds arising therefrom, to be applied, on or before the first of March, in each year, towards the payment of the debt and interest, and for any portion of the debt remaining due at the expiration of the five years, the property to be sold by the trustee. It was also

agreed, that Alexander should remain in the possession of the property, and have the management thereof, the more effectually to enable him to discharge the purposes of the trust.

As a general rule, the right of every one to dispose of his property, as his pleasure, interest, or even *caprice, may dictate,* is unquestionable. The power of Courts of justice to interfere with, or in any manner to control such disposition, exists only, when this right is exerted to the prejudice of third persons. If by such a disposition of the property, the creditors of the grantor are defrauded, delayed, or hindered of their just rights, then, and not till then, the power exists in Courts of justice to interpose, and to give the property its proper destination. Now, it does not appear on the face of this deed, that Alexander had a creditor in the world, or that he owed a debt beside the one he was then providing for; how then can it be inferred from the deed, that there was an intention to hinder and delay creditors. As every man is presumed to intend the natural and necessary consequences of his acts, Courts will presume the intention to exist, when the consequence must naturally follow, and will not listen to an averment against it. Such was the case of Gazzam v. Poyntz, 4 Ala. Rep. 374. There, the Court held the deed to be fraudulent, and void, because the intent was apparent on the deed, to delay and hinder creditors, although both the maker of the deed, and the trustee, in their answers, declared that no such intention was entertained; but that the objectionable feature of the deed, was introduced for the *benefit* of creditors, and there was no proof to the contrary. It is self-evident, that where there are no creditors, there can be no intention to defraud them, and as we are now sitting in judgment on the deed itself, it must be tried by its own stipulations, and declarations, and, so considered, it is such a deed as any one in the community has a right to make, or to accept.

It is further urged that it does not appear from the allegations of the bill, that Irwin assented to the deed when it was made; and that as the payments of the debt provided for in the deed, are not so favorable to the complainant, as the contract recited in the bill, upon the authority of Elmes v. Sutherland, no such assent can be presumed; and although there is proof of such assent, it cannot be looked to, because there is no allegation of the bill which authorized it to be made.

The bill, after reciting that Alexander had borrowed of Irwin, on the 4th February, 1841, the sum of $24,500, to be paid, &c. proceeds to state, "and that to secure the payment of the said debt, the said William J. Alexander, on the 4th February, 1841, executed a deed of trust," &c.   In our opinion it does sufficiently appear, that the beneficiary was cognizant of, and assenting to, the deed—certainty to a common intent, is all that is required in Chancery pleading.   It is not, to be sure, stated so certainly as to exclude every other conclusion, but such extreme accuracy is not required, and certainly is rarely found, in Chancery pleading.   The pleader here, is giving a historical narrative of the transaction.   He commences by stating the loan of the money, and the terms of the loan, and in the next sentence says, *and* to secure the payment of the said debt, on the 4th of February, 1841, which is the day the loan is stated to have been made, executed, &c.   Certainly, it cannot be doubted that the pleader is speaking of an entire transaction ; there is as much reason for supposing that Irwin was present when the deed was made, as that he was there when the contract of loan was entered into.   We think that by all rules of just interpretation, or fair criticism, we must understand this to be an allegation, that the deed was made to secure the payment of the debt, with the knowledge and consent of the beneficiary.

We come now to the more important question, whether the facts attending the transaction, *dehors* the deed, when considered in connection with it, will authorize, or require this Court, to pronounce it fraudulent, and void, as against creditors.

To justify a Court, in inferring that a deed was made with fraudulent intentions, when no fraud in fact is proved, two things at least must concur—there must be creditors known to the parties, who may by the provisions of the deed be delayed, or hindered, in the collection of their debts, and the necessary consequence of the deed must be to produce such delay, or hinderance.   In the cases of assignments which have heretofore come before this Court, and some of which are so strongly relied on by the counsel for the plaintiff in error, the deeds were evidently made either by insolvents, or in evident contemplation of insolvency, and necessarily suppose, if they do not admit, an inability on the part of the debtor to pay all his debts.

Such were the cases of Ashurst v. Martin, 9 Porter, 566; Gazzam v. Poyntz, 4 Ala. Rep. 374; and Cummings & Cooper v. McCullough, 5 Id. 324. In Wiswall v. Ticknor & Day. 6 Ala. Rep. 178, the decision turned upon the inference of fraud, arising from the fact that the property was left with the mortgagor, after the law day had passed.

In these cases the avowed object of the deed, was to place the property conveyed by it, beyond the legal pursuit of creditors, and by the deed itself, to provide another mode for the payment of their debts. In such a case any control retained over the property by the debtor, or benefit secured to him, being inconsistent with the honest purposes of the deed, is a fraud upon the creditors. But, when a deed is made by one not insolvent, to secure a single creditor; when it does not convey all the property of the debtor, and not more than is reasonably sufficient to secure the debt, no such presumption arises, although there may be other creditors, and the debtor may stipulate for a benefit under the deed, and be entitled to the use of the property. This indeed is the common case of a mortgage. Such in effect was this case. An advance of a large sum of money (near $20,000) was made by Irwin, to Alexander, to enable the latter to extricate himself from embarrassment, and which is applied to the payment of his debts. To secure the repayment of the debt in five years, this deed is made. The avails of the property so conveyed being devoted to the same object, and the property does not appear to have been more than sufficient for the purpose of securing the debt. It appears that the debtor had property to the value of twelve or fifteen thousand dollars, not embraced in the deed. It also appears, that he was considered good for all his debts, at the time the deed was made. He has been examined as a witness and says that he informed Irwin, that if he could procure the loan, to relieve him from pressing debts, his "affairs would be safe and easy." That his subsequent embarrassment has arisen from the failure of a mercantile firm, of which he was a member, and which he then supposed would yield him a profit.

We think it perfectly clear, that these facts do not establish a fraudulent intent, or authorize the inference of any such intention, because it does not appear, that any creditor would

necessarily be delayed by the execution of the deed; and if the deed was justifiable at the time it was made, it cannot become fraudulent by a change in the condition of the grantor subsequent to that time.

It has been shown, that in such a case as the present, the grantor might have reserved an interest in the deed, but if it were necessary to consider that question, we should be inclined to think no interest whatever was retained. He stipulates for the possession and management of the property, but the entire avails of the plantation were to be applied to the payment of the debts, and as he did not reside in Alabama, and only visited his plantation once a year, the whole effect of the stipulation appears to have been, to authorize him to employ the overseers, and to sell the products of the plantation to perform the trust.

The stress of the argument has been, that by the provisions of the deed the plantation and slaves were placed beyond the reach of the other creditors for five years, and if so, might be thus protected for an indefinite period of time, and that the effect would be, to place the property out of the reach of the law, until the debt was paid from the profits.

Doubtless a deed made in contemplation of the insolvency of the grantor, with such a provision, as it must necessarily delay and hinder the creditors not provided for in the deed, in the collection of their debts, might be evidence of a fraudulent intent. If, however, a deed fairly made to secure a debt, becomes, by subsequent events, oppressive, or injurious to other creditors, although such a condition of things would not affect the deed, which was valid at its inception, yet a Court of Chancery would compel the beneficiary so to act, as not to injure other creditors. A familiar example of this rule, is, where one creditor has two funds to which he may resort, whilst another has but one, the Court will compel him to seek satisfaction out of that fund to which the other creditor cannot resort, so that both debts may be paid. So we entertain no doubt, that in such a case as the present, a Court of Chancery may direct the trust to be executed immediately, and by a sale of the property after satisfying the trust, pay over the residue to the other creditors.

These views conduct us to the conclusion, that this deed is

88

valid, and should be upheld. We are not insensible to the earnest argument of the counsel for the plaintiff in error, against the danger to the community from a decision, which would facilitate the commission of fraud ; but it is a duty quite as imperative on the Court, to sustain contracts which are *bona fide*, as it is to suppress those which are fraudulent.

It is to be observed, that in this case, the attachment and execution of the plaintiffs in error, were levied on the land and slaves conveyed by the deed. Whether their executions might not have been levied on the products of the plantation, would involve an inquiry not raised upon this record, and upon which, for that reason, we decline the expression of any opinion.

The objection taken to the registration of the deed, does not appear to be well founded.

Let the decree of the Chancellor be affirmed.