# John H. Baldwin v. Peet, Sims & Co.

The statute of frauds presents two distinct motives or intentions with which a deed may be made; the one vitiating, and the other sustaining it. A failing debtor has not a right maliciously, covinously, &c., to execute a deed with intent to hinder, delay, or defraud his creditors; but he has the right, upon good consideration, and *bonâ fide,* lawfully to convey his property in trust to pay his creditors, with or without preference.

When a debtor makes a deed disposing of his property, under the influence of the special intention of delaying, hindering or defrauding his creditor, in enforcing the payment of his debt, his act is said to be contrived in malice, covin, fraud, &c., which is designated in the statute as a guileful and covinous device and practice, that renders the conveyance void.

To hinder and delay creditors, is the usual and necessary effect of every general assignment, and being so, it must be presumed to have been contemplated as a consequence of the act, however honest the intention of the debtor may have been. *If such intention, however, be not only present in the mind, but is the object,* and constitutes a part of the cause for the execution of the deed, it will render it void.

On the other hand, if the purpose, in executing a deed, be to pay honest debts, either by general distribution, or by exercising a preference among creditors, although it has, and must be foreseen to have, necessarily a tendency to defeat or hinder the other creditors, it will be valid.

Where a deed is a mere pretence collusively devised, founded on a pretended consideration, and the parties do not intend the property to pass otherwise than ostensibly, there is a trust that the grantee shall hold for the grantor's benefit. As to the creditors, the property has not passed, and the grantor's reservation enures to their benefit. The deed is void, not only because of the specific fraudulent intent, but also, because of the reservation of a benefit to the grantor in the thing conveyed, inconsistent with the terms and ostensible object of the transfer.

Where there is a consideration, and it is the intention of the parties that the title to the property shall pass to the grantee, irrevocably, but the influencing motive in making the transfer, is the malicious intention to defeat entirely, or to hinder and delay the collection of honest debts, it is made void by reason of the fraudulent intent with which it is executed.

The specific malicious, covinous, guileful intention to hinder, delay, or defraud creditors, *is a question of fact, to be ascertained upon evidence submitted to a jury.*

The effect of a reservation of an interest in the thing conveyed, depends upon the character of the conveyance. In a mortgage, such reservation, whether expressed in the deed or not, is of itself harmless, because it is consistent

with the object of the conveyance. And where a failing debtor assigns a specific article of property to particular creditors, with a reservation to himself of any balance that may accrue, although it be in the shape of a special assignment, it is in effect a mortgage; and the reserved balance does not vest, and is subject to be reached, according to its nature, either by execution or bill in equity.

In case of a general assignment by a failing debtor, it has generally been held, that a reservation of any interest whatever, in the thing conveyed, will avoid the instrument.

This is to be distinguished from a case where the reservation extends only to property exempt from forced sale. And also from an assignment excepting from the operation of the conveyance, a certain portion of property which, not being conveyed, is still subject to be seized by creditors, and which makes it really a partial assignment, though it be in form, general.

An assignment may also be held invalid, by the court, under the third section of the statute of frauds, by reason of the inherent defects of the deed, as a transfer of property. For instance, where it does not vest in any creditor a certain, direct, or absolute interest in the property; or where there is no such description of the property, by schedule or otherwise, that it can be identified or ascertained.

The court may also declare a general assignment void, as to creditors, where the fraudulent intent is expressed or admitted; where it contains a reservation of an interest, advantage, or benefit to the assignor, inconsistent with the object of the conveyance; and where the deed is wanting in some of the qualities, which, when wanting in a deed, render it inoperative as a conveyance of property.

But the court cannot declare the deed void, as a matter of law, without the aid of a jury, because it authorizes the trustee to sell the property, within his discretion, for cash or upon a credit, at public or private sale, names the attorneys to be employed in executing the trust, and provides that the trustee shall not be answerable for the negligence or misdoings of other persons.

These are facts which may tend to establish the fraudulent intent. They are badges of fraud, rather than fraud *per se;* and a court of equity, having a right to find the facts from the evidence, may well infer, from these established facts, the additional and important fact of fraudulent intent, and having found it, declare the legal consequence, by setting aside the deed as void. But this power of a court of equity, of finding one material fact which is not admitted, by inference and deduction from those that are admitted, does not pertain to our courts.

In none of these provisions, is there any thing to be 'found, which may not be proper under certain circumstances, and therefore, they are the subject of explanation by other facts.

The fraudulent intent, by which a deed is rendered void, is not necessarily

involved in the mere intention on the part of the assignor "to protect his goods from legal process."

The assent of creditors to a general assignment will be presumed, so as to give it effect, although they may know nothing of it when it is made; but when the assignment is made with a fraudulent intent, the assent of the creditors will not be presumed; and such deed is inoperative and void as to creditors, although the fraudulent intent was unknown to the trustee.

A reservation of property not conveyed, does not necessarily vitiate the assignment. It is but a badge of fraud, subject to be explained or accounted for, and is important or unimportant evidence, tending to establish fraud or not, according to the circumstances of the case.

Where an erroneous charge has been given by the court below, upon an isolated question, about which there could be no doubt as to the facts, and it is not certain that the minds of the jury passed upon the main facts of the case, upon which the verdict would be sustained, if sustained at all, and the error may have influenced their finding, the cause will be remanded.

APPEAL from Calhoun. Tried below before the Hon. Fielding Jones. The facts are stated in the opinion of the court.

*Baldwin* and *Seawell*, for appellant.

*F. S. Stockdale*, for appellees.

ROBERTS, J. This case involves the question of the validity of an assignment in trust for the benefit of creditors.

The petition of Baldwin, the trustee, represents that Peet, Sims & Co. have recovered a judgment against Louis E. Salles, which they are endeavoring to satisfy, by causing their execution to be levied, on the 6th day of May, 1854, upon certain property, being goods, wares and merchandise, transferred to him by Salles, in trust, for the benefit of creditors, in February, 1854; that Salles, from misfortune, not having sufficient means to pay his debts, made this deed of assignment in trust to pay all his debts, equally, and among the rest, the one to Peet, Sims & Co., upon which this judgment is rendered. The deed is made a part of the petition, and recites that Salles has not sufficient means probably to pay his debts, which also appeared

in the estimate made in the schedule, attached to the deed; also that he is desirous of making "such a disposition of his property "as that sacrifices may be avoided, and that may produce the "most that can be realized therefrom, to be promptly and justly "distributed among his creditors."

It purports to be a general assignment of all his effects, to pay equally all his debts, with schedules of each annexed. It directs that the trustee "shall proceed in the manner that he "shall deem best for the interest of all my (his) creditors, to sell "and dispose of, &c., all the estates, stocks, goods, wares, mer- "chandise, bills, bonds, notes of hand, accounts, and other things "hereby conveyed, or intended to be conveyed, to such persons, "for such prices, and upon such terms and conditions, for cash "or customary credits, at private sale or public auction, as in "his judgment may appear best, and most for the interest of all "concerned; to collect the proceeds of such sales, and also to "collect and realize, in money, the most that may be practica- "ble, from the bills, bonds, notes of hand, accounts, claims, "demands hereby conveyed," &c. Also, it directs that the trustee shall discharge all reasonable expenses, commissions, attorneys' fees of Simpson & Woodward, whom he is directed to employ, and divide the balance among the creditors, *pro rata*, should there not be enough to pay them in full. It also contains a stipulation that Baldwin accepts the trust, and obligates himself to execute it "with diligence and fidelity," but that "he "shall not be answerable for the negligence or misdoings of any "other person." The deed was signed by Salles and Baldwin. The petition further alleges, that the trustee, upon the execution of the deed, took possession of the property, and was proceeding to execute and perform his duties under the trust, when the execution was levied upon the goods, &c., in his possession; and prays an injunction to restrain the sale, and that he may be adjudged to be entitled to the possession of the goods, in order to carry out the trust reposed in him.

The defendants excepted to the petition generally and spe-

cially, that the deed was void upon its face for the reasons which will be noticed hereafter.

The exceptions being overruled, the defendants answered, that the deed of assignment was fraudulent and void as to them, it having been made and contrived of malice, fraud, covin, collusion and guile, with the intent and purpose to hinder, delay, and defraud these defendants, and other creditors of him, the said Louis E. Salles, &c.

On the trial before the jury, it was shown that Baldwin was in possession of the goods, disposing of them, &c., in pursuance to the trust, at the time of the levy; and the deed and record thereof was given in evidence. The defendants read in evidence a letter of Salles, written to a firm in New York, some time after he had made the assignment, disclosing the fact that he had reserved, from the assignment funds, in money and notes, to the amount of $1,123, which was retained, as he states, because he had used in his business $982 of his wife's money.

The jury found a verdict in favor of the defendants, and a decree was rendered against the validity of the deed.

To sustain this decree, it is contended by the defendants, that the court below should have sustained their special exceptions to the petition, instead of overruling them. If this be so, it will be unnecessary to consider the matters of law and fact arising upon the trial.

The exceptions were, that the deed was void and fraudulent upon its face, because:

1st. It authorized the trustee to sell the effects on a credit, if he wished.

2d. It gave the trustee full discretion as to the mode of disposing of the property.

3d. It named the attorneys to be employed in executing the trust.

4th. It provided that the trustee should not be answerable for the negligence or misdoings of other persons.

If these be not sufficient to enable the court to pronounce the

deed void on its face, as matter of law, then the plaintiffs below seek to reverse the decree rendered, because of errors alleged to have been committed in the charge of the court to the jury.

The court charged the jury that, "if they believed from the "evidence, that the deed of assignment was made by Salles, "with an intention, on his part, to protect his goods from legal "process on behalf of his creditors, or delay the creditors in "the collection of their debts, the deed would be within the "statute of frauds, and therefore void, and you should find for "the defendants; and it would make no difference as to the "validity of the deed, whether Baldwin, the assignee, knew of "the fraudulent intention on the part of Salles, the assignor, "or not; the deed would still be fraudulent and void.

"If you believe from the evidence, that the assignor reserved, "for his own use, a portion of the goods, or their proceeds, and "did not transfer the whole in good faith and honestly, the "deed would be void, and you should find for the defendants."

This last charge was corrected by one asked by the defendants, so as to make it permissible to retain property exempt by law from forced sale.

These exceptions to the validity of the deed, for matters apparent on its face, and the correctness of these charges, constitute the questions in the case, which alone it is necessary to consider, and are here presented together, because they must all be determined by the view which may be taken of our Statute of Frauds.

In considering whether or not the court can determine the deed to be fraudulent and void, for matters on its face, it must be borne in mind, that certain material facts are admitted by the pleadings, or appear on the face of the deed, to wit, that Salles was in failing circumstances; that he made professedly a general assignment in trust; that the execution was levied on the goods in a short time after the execution of the deed, before they were disposed of by the trustee; and that thereby it appears that the practical effect of the deed has been to hinder and delay a creditor in the ordinary and rightful pursuit of his remedy in collecting his debt. This effect was

also evidently contemplated in making the deed, as evidenced by the expression of the assignor, that he "is desirous of "making such a disposition of his property, as that sacrifices "may be avoided." Thus the court is put legitimately, as a starting point, into the position, to know the situation of the assignor, the character of the deed of assignment, and its necessary effect upon a creditor. The thing remaining to be ascertained, is the intention with which the deed was made.

It is contended, by the defendants, that the court can determine that intention to have been fraudulent as to them, as matter of legal deduction, without the aid of a jury, by inspection of the terms of the deed, which is made part of the plaintiff's petition, to wit, in giving the trustee full discretion in the disposition of the property, and even to sell it on credit, if he should think it best; in naming attorneys to be employed in executing the trust; and in limiting the responsibility of the trustee. We think these are facts, which may tend to establish the fraudulent intent. They are badges of fraud, rather than fraud, *per se*. A court of equity, having a right to find the facts from the evidence, might well infer, from these established and patent facts, the additional and important fact of fraudulent intent; and having thus found it, declare the legal consequence, by setting aside the deed as void, just the same as though the fraudulent intent was confessed in the petition. This power of a court of equity, of finding one material fact, which is not admitted, by inference and deduction from those that are admitted, does not pertain to our courts, in causes involving principles of equity, any more than those involving questions of law, as contradistinguished from equity.

To ascertain the exact character of this intention, which renders a deed void, it is proper to refer to the language of the statute. It is, that every grant, &c., had or made and contrived of malice, fraud, covin, collusion or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, &c., shall be taken to be utterly void as to such creditors. But this shall not extend to any estate or interest in

lands, goods, &c., which shall be, "upon good consideration, and *bonâ fide*, lawfully conveyed or assured, to any person," &c. Here, we are presented with two distinct motives or intentions with which a deed may be made; the one vitiating, and the other sustaining it; and however difficult it may be to determine which one of the two was the cause of its execution practically, that must be the issue to determine its validity. A failing debtor has not a right to maliciously, covinously, &c., execute a deed, with intent to hinder, delay, or defraud his creditors. A failing debtor has a right, upon good consideration, and *bonâ fide*, lawfully to convey or assure by deed of assignment, his goods, &c., in trust, to pay his creditors, with or without preference. (Burrill on Assignments, 98, 99.)

Which of these propositions do the facts establish, is the practical question. It is important to consider the elements of these two propositions in connection. As to the first, it must be considered that the law favors the diligent, and recognizes the right of the creditor to demand and enforce the payment of his debt, when it becomes due; and any disposition of the debtor's property, by which this right of enforcement is hindered and delayed, inflicts an injury upon the creditor. When the debtor makes a deed disposing of his property under the influence of this special intention, to inflict this injury upon his creditor or creditors, then his act is said to be contrived in malice, covin, fraud, &c., which is designated in the statute as a guileful and covinous device and practice, which renders the conveyance void. The bare intention to hinder and delay creditors, being present in the mind of the debtor, in making the deed, is not sufficient to avoid the deed. That is the usual and necessary effect of every general assignment for the benefit of creditors, and being so, it must be presumed to have been contemplated as a consequence of his act, however honest his intention may have been. If such intention, however, not only be present in the mind, but if it be the object, and constitute a part of the cause for the execution of the deed, it will render it void. (Burrill on Assignments, 375; United States v. Bank

of the United States, 8 Rob. La. Rep. 402; Farmer's Bank v. Douglass, 11 Sm. & Marsh. Rep. 469; Ingraham v. Grigg, 13 Id. 22.)

On the other hand, if the purpose in executing a deed of assignment, is to pay honest debts, either by general distribution, or by exercising a preference among the creditors, it will be valid. In the language of a very great judge, (Gaston, J.,) "every conveyance of property by an insolvent or embarrassed "man, to the exclusive satisfaction of the claims of some of his "creditors, has, necessarily, a tendency to defeat or hinder his "other creditors in the collection of their demands. But if the "sole purpose of such a conveyance be the discharge of an "honest debt, it does not fall under the operation of the statute "of frauds. It is not embraced within its words, which apply "only to such as are contrived of *malice, fraud, collusion*, or "*covin*, to the end, purpose, and intent to delay, hinder and "defraud creditors." (Hafner v. Irwin, 1 Ired. Law Rep. 490.)

Courts of equity regard with favor the fair and just motives of a failing debtor, in the equal distribution of his effects, by an assignment of all his property, even though its effects may necessarily be, and must be foreseen to be, to hinder and delay a vigilant or pressing creditor; and it can readily be conceived that this just motive, as well as that of preferring some favorite creditors, may, and often does, rise above any mere desire to thwart the urgent pursuit of any one or more creditors.

The character of this fraudulent intent may be further illustrated, by the modes in which it is practiced.

1st. When a deed is a mere pretence, collusively devised, is founded on a pretended consideration, and the parties do not intend the property to pass otherwise than ostensibly, there is a trust that the grantee shall hold for the grantor's benefit. As to the creditors, the property was not passed, and the grantor's reservation shall enure to their benefit.

2d. When there is a consideration, and it is the intention of the parties, that the title to the property shall pass to the

grantee, irrevocably, but the influencing motive, in making the transfer, is the malicious intention to defeat entirely, or hinder and delay, the collection of honest debts.

The last proposition presents a transaction which is made void by the fraudulent intent. The first proposition presents one which is void, not only because of the specific fraudulent intent, but also, because of the reservation of a benefit to the grantor, in the thing conveyed, inconsistent with the terms and ostensible object of the transfer, which is itself a fraud upon creditors, who are hindered and delayed by it. (See Twine's Case, with English and American notes of cases, 1 Smith's Lead. Cases, pages 33, 34, 35, and 48; Wright v. Linn, 16 Tex. Rep. 324; Goodrich v. Downs, 6 Hill's Rep. 438.) The elements of these two propositions may be modified or blended, and thereby require the distinguishing features of each to be traced out and taken into consideration.

The specific malicious, covinous, guileful intention to hinder, delay, or defraud creditors, is a question of fact, to be ascertained upon evidence, as other facts are in our courts, submitted to a jury. (Linn v. Wright, 18 Tex. Rep. 317; Seward v. Jackson, 8 Cow. Rep. 406; Goodrich v. Downs, 6 Hill's Rep. 438.)

The portions of this deed, which, it is contended, render it void, are evidence strongly tending to prove this specific intention, but they are only evidence of it; and if they invalidate it at all, it must be upon some other ground. The effect of a reservation of an interest in the thing conveyed, depends upon the character of the conveyance. In a mortgage, such reservation, whether expressed in the deed or not, is of itself harmless, because it is consistent with the object of the conveyance. This has been held, even where a failing debtor assigned a specific article of property to particular creditors, with a reservation to himself of any balance that may accrue. Although it was in the shape of a special assignment, it was held to be in effect a mortgage, and that the reserved balance, if any, did not vest, and was subject to be reached, according to its nature,

either by execution or by bill in equity. (Leitch v. Hollister, 4 Comst. Rep. 211.)

The same may be said, generally, of deeds of trust, made in good faith, to secure and pay debts of particular creditors, which are in the nature of mortgages, with some of the qualities of an assignment superadded. (Burrill on Assignments, 33; Hafner v. Irwin, 1 Ired. Law. Rep. 490; Elmes v. Sutherland, 7 Ala. Rep. 262; Farmer's Bank v. Douglas, 11 Sm. & Marsh. Rep. 469; Hendricks v. Robinson, 2 Johns. Ch. Rep. 283; Burgin v. Burgin, 1 Ired. Law. Rep. 453.)

These classes of cases are referred to, merely to illustrate that reservations are sustained only when they are consistent with the objects of the deed.

In the case of a general assignment by a failing debtor, such as the one now under consideration, it has generally been held, that a reservation of an interest in the thing conveyed, will avoid the instrument. (Goodrich v. Downs, 6 Hill's Rep. 438; Burrill on Assignments, 393.) The rule is well stated by Justice Ormond, in the case of Gazzam v. Poyntz, 4 Ala. Rep. 382: "An assignment by a debtor, where the property con- "veyed by the deed is, by its terms, fairly and *bonâ fide* de- "voted to the payment of the creditors, without stipulating "any benefit to the debtor, and where the equitable interests "of the creditors are fixed and determined by the assignment "itself, is valid."

Mr. Burrill lays it down as a "settled general rule in Ameri- "can law, that a clause or provision in an assignment, by which "any benefit or advantage is reserved to the debtor, at the ex- "pense of the creditors, whether such benefit be temporary or "permanent, whether it be in the shape of a gross or annual "sum, employment at a compensation, or otherwise, or whether "reserved to the debtor himself, or for the support of his family, "is a fraud in law, and vitiates and avoids the whole assign- "ment." This is to be distinguished from a case where the reservation extends only to such property as may be exempt from forced sale, (Burrill on Assignments, 235,) and also from

an assignment, excepting from the operation of the conveyance itself, a certain portion of property for the use of the debtor, which of course, not being conveyed, is still subject to be seized by creditors, and which makes it really a partial assignment, though it may be in form, general. (Burrill on Assignments, 174–5 ; Id. 97 ; Ingraham v. Grigg, 13 Sm. & Marsh. Rep. 22.) There is also a resulting trust in favor of the assignor, after payment of the debts, if any funds should be left, whether expressly reserved or not.

The principle of the rule in relation to a reservation of a benefit may be traced, as it is believed, to the third section of our statute, (Hart. Dig. Art. 1453,) which is in the nature of a proviso to the second, and provides, that the latter "shall not "extend to any estates, goods, &c., which shall be, upon good "consideration, and *bonâ fide*, lawfully conveyed or assured to "any person," &c. A general assignment, whose object is to convey the effects of the debtor, and appropriate them to the payment of his debts, and which is sustained, as a lawful conveyance or assurance, notwithstanding its effect to hinder and delay creditors, because that is its object, can hardly be said to convey the property lawfully and in good faith, when there is a reservation of an interest or benefit to the grantor, in the property pretended to be thus appropriated. This is in unison with the principle developed in Twine's Case, in which it is said "continuance of the possession in the donor is the sign of trust," —that is, of a reservation of use, interest, or benefit—inconsistent with the terms of the deed. (1 Smith's Lead. Cases, 34, 48.) This reservation of an interest or advantage, is sometimes exhibited in retaining control of the appropriation of the effects, directly or indirectly. (Burrill on Assignments, 398 ; Sheldon v. Dodge, 4 Den. Rep. 217 ; Cannon v. Peebles, 4 Ired. Law Rep. 204 ; Hart v. Crane, 7 Paige's Ch. Rep. 37.)

Such assignment may also be held invalid by the court, under this third section, by reason of the inherent defects of the deed, as a transfer of property. For instance, where it does not vest in any creditor certain, direct, or absolute interests

in the property, (Gazzam v. Poyntz, 4 Ala. Rep. 374;) or where there is no such description of the property, by schedules or otherwise, as that it can be identified, or ascertained. (Linn v. Wright, 18 Tex. Rep. 317.)

Then, as to such a general assignment, it may be safely assumed, as it is believed, that the court may pass upon its validity, and declare it void or inoperative as to creditors, when the fraudulent intent is expressed or admitted; when it contains a reservation of an interest, advantage or benefit, to the assignor, inconsistent with the object of the conveyance; and when the deed is wanting in some of the qualities, which, when wanting in any deed, render it inoperative and invalid, as a legal convey-ance of property.

The portions of the deed, which it is contended avoid it, will not fall under either of these grounds of judicial cogni-zance. To advance further, brings us into a broad field of un-certainty, amidst a maze of conflicting authority. The light of authority is weakened also, by the various different statutes, in England and the States of this Union, which have influenced the decisions of the courts upon the subject.

Giving the trustee a discretion to sell the goods on a credit, has sometimes been held to be a fraud in law upon creditors. (Barney v. Griffin, 2 Comst. Rep. 365.) Other cases establish the contrary doctrine. (Ashurst v. Martin, 9 Port. Ala. Rep. 566.) If the debts were not due for some time, it might be a very proper provision to sell on a credit.

Also, a discretion to the trustee as to the manner of sale, whether private or public, &c., has been sustained as proper. (Abercrombie v. Bradford, 16 Ala. Rep. 560; Neally v. Am-brose, 21 Pick. Rep. 185.)

In the case of Ashurst v. Martin, a limitation of the respon-sibility of the trustee, very similar to the one expressed in this deed, was held not to vitiate the assignment. (9 Port. Ala. Rep. 566; Burrill on Assignments, 208.)

The naming of attorneys to be employed in the execution of

the trust, it is believed, stands on the same footing as the appointment of a trustee. The attorney, when engaged in the business, as well as the trustee, must act on his own responsibility, and if the appointment should be injudicious, it will be a badge of fraud. (Burrill on Assignments, 399.)

In none of these provisions, is there anything to be found, which might not be proper under some circumstances, and therefore they are subject to explanation by other facts. (Cunningham v. Freeborn, 11 Wend. Rep. 240.)

The charges of the court were erroneous. It has been seen, that the fraudulent intent, by which a deed is rendered void, is not necessarily involved in the mere intention, on the part of the assignor, "to protect his goods from legal process," where the intention to hinder and delay is an incident, contemplated as a consequence of his act, but not designed in whole or in part as the object of it. If the intention to hinder and delay creditors influenced, in whole or in part, the assignor, as an object in making the deed, it would be void. If, on the other hand, to hinder and delay creditors was only contemplated as an incident, and his real purpose and object, in making the deed, was to pay his debts, by assignment of his effects, it would be valid. Whether the assignor was actuated by the one or the other of these different purposes, in making the deed, was the true issue in the case, upon the question of intention. The alternative of determining the one or the other, according to the evidence, should have been submitted to the jury. This was not done in any part of the charge, either directly or inferentially.

That part of the charge which made it immaterial whether the trustee knew the fraudulent intent of the assignor or not, does not appear to be objectionable, in this case. The American decisions hold, that the assent of creditors to a general assignment will be presumed, so as to give it effect, although they may know nothing of it when it is made. (Nicoll v. Mumford, 4 Johns. Ch. Rep. 522 ; Cunningham v. Freeborn, 11 Wend. Rep. 240 ; United States v. Bank of the United States, 8 Rob. La. Rep. 262 ; Abercrombie v. Bradford, 16 Ala. Rep. 560.)

While its validity rests upon a presumed fact, it is but fair that the presumption of assent should extend to the whole transaction; otherwise, by the legal presumption, a fraud might be aided in its perpetration. Hence, it has been held, that where an assignment in trust was made with a fraudulent intent, unknown to the trustee, the assent of the creditors would not be presumed. (Townsend v. Harwell, 18 Ala. Rep. 301; Burrill on Assignments, 311.)

The second charge cannot be sustained, as it is believed. A reservation of property not conveyed, does not necessarily vitiate the assignment. The property, if not exempt from forced sale, is still liable to be taken by creditors, the same as if no assignment had been made. (Burrill on Assignments, 174, 97, 225; Ingraham v. Grigg, 13 Sm. & Marsh. Rep. 22.)

Under such a rule, the reservation of a small amount, either openly or privately, on purpose or by accident, would inevitably defeat a general assignment of a large estate appropriated to creditors upon the fairest terms; and however it may have happened, it would be beyond the reach of any explanation consistent with fair dealing. It is, indeed, but a badge of fraud, subject to be explained or accounted for, and is important or unimportant evidence, tending to establish fraud or not, according to the circumstances of the case.

We are of opinion, then, that the court below did not err in refusing to adjudge the deed to be fraudulent upon its face, for the causes set out in the exceptions of the defendants. But there being error in the charges of the court, which may have been material in finding the verdict by the jury, the judgment is reversed, and the cause will be remanded.

The first charge above referred to, though erroneous, was not greatly calculated to mislead the mind of the jury, and upon that alone, under the facts of the case, the verdict and judgment would not be set aside. The second charge referred to, (as to the reservation) was upon an isolated question, about which there could possibly be no doubt upon the facts; and that charge being erroneous, there is not any certainty, that the minds of

the jury passed upon the main facts of the case, upon which we would sustain the verdict, if we were to sustain it at all. As we cannot say, with certainty, that this error may not have influenced the finding, the cause will be remanded.

Reversed and remanded.

WHEELER, CH. J., (dissenting.) I do not think the judgment should be reversed, and the cause remanded for a new trial, on account of the misdirection of the judge. We have decided in another case (Carlton et al. v. Baldwin, *infra* 724,) upon the same facts, that the jury could not legally have rendered a different verdict, from that which they have rendered in this case. And it has been the constant practice of this court, to refuse to reverse and remand for a new trial, where it is manifest the result must be the same upon another trial. That this is in accordance with the practice of other courts, will be seen by consulting the numerous authorities collected in Graham & Waterman on New Trials, chap. 10, tit. Misdirection of Judge. "The remedial interposition of courts in granting new trials, is "wholly for the benefit of parties, and not to compel the good "conduct of the judges." A mere theoretical error of the court, is not good ground of reversal.

The effect of reversal in such case, would be to create additional costs, put the parties to great expense and trouble, and occupy the time of the court below in another trial, merely to correct theoretical errors that exerted no practical influence on the issue of the cause. (Ibid. Price v. Evans, 4 B. Monr. Rep. 386 ; Duckett v. Crider, 11 Id. 188 ; Ingraham v. South Carolina Ins. Co., 3 Brev. Rep. 522 ; 3 Wend. Rep. 348.)

Litigation is an evil, and the courts will not needlessly protract it by granting new trials, when it is manifest no practical benefit can result to the parties. As the result must have been the same, under a correct charge upon the law, and no benefit can result from a new trial, the error in the charge becomes immaterial, and my opinion therefore is, that the judgment should be affirmed.