## John J. Linn v. Wright and Others.

Where a merchant in failing circumstances makes an assignment of his stock in trade and notes and accounts, to a trustee for the benefit of certain creditors, although it is not forbidden by law that the trustee should employ the debtor to keep open the store and retail the goods, and collect the notes and accounts, yet the debtor will be deemed, *prima facie* at least, to conduct himself in his dealing with the property, in accordance with the understanding between himself and the trustee; the latter is bound to take notice of the manner in which the debtor conducts himself in such employment, and if the latter be permitted to use and control the assigned effects in a manner wholly inconsistent with the purposes of the trust, and as his own, it will be evidence that the assignment was intended not only to secure the preferred-creditors, but also to secure to the assignor himself certain benefits out of the property assigned, to the hindrance of the other creditors in the enforcement of their rights; and, that such a purpose will render the deed fraudulent and void as to the deferred creditors, does not admit of question.

There is no such rule of evidence or principle of law, as that, in order to author-

ize a jury to deduce from circumstantial evidence the conclusion of fraud, the circumstances must be of so conclusive a nature and tendency, as to exclude every other hypothesis. If the evidence is admissible, as conducing in any degree to the proof of the fact, the only legal test applicable to it, upon such an issue, is its sufficiency to satisfy the minds and consciences of the jury, (subject, of course, to the power of the Court to grant a new trial, as in other cases.)
See this case for facts admissible in evidence to prove fraud in an assignment by a debtor in failing circumstances, where the trustee permits the debtor, under what agreement soever, to remain in possession and manage the property.
As a general rule, the mere omission to annex the usual schedules to an assignment for the benefit of creditors, is not, in itself, sufficient to avoid the assignment. In some instances, and when taken in connection with other circumstances, this fact of omission may be considered a badge of fraud.
Where a merchant, in failing circumstances, assigned " all and singular his stock in trade, consisting of goods, wares and merchandise, and named in the schedule hereunto annexed, dated August 24th, 1852," (the assignment being made on the 9th of September ;) but the schedule was not annexed, the Court said its absence was a suspicious circumstance, and unless explained, or unless there was satisfactory proof of what property was included in the general reference " all my stock in trade," so that it might certainly appear for what the assignee was responsible, the Court, it would seem, might well have sustained the motion to exclude the assignment from the consideration of the jury.
Instructions will not be deemed erroneous, (although excepted to in general terms,) merely because they do not embrace every aspect in which the party was entitled to a verdict. If the charge of the Court was thought to be imperfect or incomplete in its presentation of the law of the case, it was the right of the party to supply any supposed omission or imperfection by asking the proper instruction. Where this is not done, the mere omission of the Court to give instructions which would have been proper, is not error.
Where the Judge charged the jury that if they believed from the evidence that the assignor intended to defraud or delay his creditors by the transfer of his property, and that the assignee was cognizant of such intention at the time, the assignment would be fraudulent, this Court said, The word delay was evidently employed in the charge of the Court, and was doubtless understood by the jury, in the sense in which it is used in the Statute ; not merely in reference to a question of time, but to the interposition of obstacles in the way of creditors, with the fraudulent intent to hinder and delay ; and in that sense it was properly held to invalidate the assignment.
In a trial of the right of property, where the issue formed under the direction of the Court was whether the property belonged to the claimant, but the claimant introduced evidence tending to prove that the property was worth less than the amount at which it had been appraised, and requested the Court to

Linn v. Wright.

instruct the jury that if they found for the plaintiffs they should find the value of the property, which was refused, and the jury did not find the value of the property, it was held there was error. (It did not appear that it was called to the attention of the Court, that the value of the property was not made a part of the issue.)

Where the affidavit of claim to property taken in execution, asserted the title of the claimant in general terms, and what purported to be the claimant's answer, on file when the issue was made up, alleged his title in the same general terms, and the issue made by the parties, under the direction of the Court, was, whether the property levied on was the property of the claimant, it was held that the plaintiff must be allowed to introduce evidence in confession and avoidance of whatsoever title the claimant might introduce in evidence.

After the formation of the issues for the trial of the right of property taken in execution and claimed by a third person, the parties are not bound to anticipate further pleadings, and unless in some manner brought to the attention of the Court, or the notice of the party, in time to reply or take issue upon them, they cannot properly be considered as changing the issues previously formed, or as affecting the right to introduce evidence applicable to those issues.

Had the claimant pleaded (the particulars of) his title in the first instance ; or had his amended answer (which pleaded the particulars of his title) been filled before the issue was made up, or, had it been brought to the notice of the Court and the opposite party when filed, the latter might have been required to plead specially the matter relied on to invalidate it, in order to the formation of the appropriate issues, and the admission of evidence to impeach the title.

Where property taken in execution was claimed by a trustee under an assignment for the benefit of certain creditors, and the issue formed by the parties under the direction of the Court was, whether the property was the property of the claimant, and the Court instructed the jury that if the assignment was intended by the assignor to defraud or delay his creditors and the trustee was cognizant of such intention at the time, the assignment would be fraudulent; and the jury found that "the assignment was made for the purpose of delaying the payment of the creditors, and that the property in controversy was subject to execution;" the Court reversed the judgement on other grounds, and said nothing as to the sufficiency of the verdict.

Error from Victoria. Tried below before the Hon. Fielding Jones.

This was a trial of the right of property in a stock of goods, wares and merchandise, levied upon by virtue of executions in

favor of the defendants in error against Lavius F. Chapman, and claimed by the plaintiff in error as his property. It was before this Court once before, in 1856, on a writ of error by the present defendants in error, and the decision then made will be found reported in 16 Tex. R. 34.

The affidavit of Linn's claim, stated that the sheriff did, on the 23d day of April, 1853. by virtue of the following executions against Lavius F. Chapman, issued &c., to-wit : (here follows a description of the executions, amounting in all to $3815 35) levy upon a certain lot of goods, wares and merchandise, as the property of said Chapman, and which was then in his, deponent's, possession, in the store house in the town of Victoria, known as Chapman's store house ; the said L. F. Chapman, at the time of said levy, being his agent and clerk, and disposing of said merchandise for and on his account. A full and complete schedule and inventory of said merchandise is attached by the sheriff to said executions, and to which reference is here made. And he further states that he claims said property, levied upon as aforesaid, as his property, and that he has a good and perfect title to the same, and that this claim is made in good faith, and that he is not a party in any of the aforesaid executions.

The goods were appraised under the direction of the sheriff, at $3916 35. March 11th, 1854, an issue was formed, under the direction of the Court, as follows :  Are the goods, wares and merchandise, levied upon by virtue of the several executions against L. F. Chapman, and claimed by John J. Linn in his affidavit on file in this cause, the property of the said John J. Linn, the claimant ?

And it appearing to the Court, by the return of the sheriff upon the said executions, that the said goods, wares and merchandise were in the possession of L. F. Chapman at the time of the levies made thereupon, it is therefore adjudged by the Court that the affirmative of the issue made in this cause rests with and upon the said John J. Linn, claimant.

There was an exception to the ruling of the Court, that the affirmative of the issue rested upon the claimant ; but the former trial having resulted in the claimant's favor, it was not called to the attention of this Court on the first appeal, and would therefore probably be considered as waived. It was not assigned as error on this occasion, nor noticed in the brief of the counsel for the plaintiff in error.   There occurred in the transcript, before the entry of the formation of the issue, but marked filed Sept. 9th, 1856, doubtless a mistake for 1853, what was called in the margin of the transcript, "Answer of claimant." It was in the form of a petition ; alleged petitioner's ownership and possession of the property, its seizure &c., that petitioner had suffered damage to the amount of $1000 ; prayed that the plaintiffs in execution, naming them, be required to be and appear at the District Court, to be held &c., "on the first Monday in September, 1853 ;" that the property might be decreed to be the property of the petitioner and that he might have judgment for the damages sustained.   It was, in effect, a plea in reconvention ; it alleged the ownership of the property in the same general terms used in the affidavit of claim.   September 9th, 1854, claimant filed what is called in the margin of the transcript, an "Amended Answer ;" but it did not purport in the body thereof, nor otherwise, to be an amended answer, but an original.   It alleged specially the conveyance of the property to the claimant by Chapman in the terms of the deed of assignment, a copy of which will be found in 16 Tex. R. 35 ; his possession at the date of the levy, &c., &c.   There was no entry of leave to amend.

At the trial the claimant introduced A. H. Phillips, as a witness, who being shewn the trust deed from L. F. Chapman to the plaintiff, dated Sept. 9th, 1852, stated that he was a witness to said deed, and that it was executed by Chapman and Linn ; that the goods referred to in the same were delivered to Linn immediately after its execution.   He further stated that said goods were under attachment, sued out against Chapman, and

were in the hands of the Sheriff of Victoria ; that there was an
agreement, made between Chapman and his attaching creditors,
that, if he, Chapman, would give good  personal security, they
would release the goods.   J. J. Linn, Edward Linn, P. M. Pre-
dam, J. D. Logan and Mitchell agreed to go his security to the
several attaching creditors, upon the  express  condition that
Chapman should transfer his property and effects to J. J. Linn,
in trust, to be by him sold for the  payment  of the  debts for
which they were security ; and that, in accordance, they signed
said note as securities ; and Chapman executed said deed, and
that the goods were released  from  attachment and  delivered
to Linn.

He then introduced in evidence the deed  of  assignment,
which will be found at page thirty-four 16 Tex. R.; the deed
of assignment was dated Sept. 9th, 1852, and was accepted by
Linn, the assignee, and recorded same day.  He then introduced
schedule C, being a list of accounts due  Chapman, amounting
to $3,347 74, and notes amounting to $360 08.   It was dated
Sept. 1, 1852, and was annexed to the deed.   He then intro-
duced a schedule of debts due  from  Chapman, marked A, da-
ted Sept. 9, 1852, amounting in all to  $17,451 69, certificates
of acknowledgment and  record, February 16th, 1853.   Here
followed, in tabular form, without words of introduction, com-
mencing in the middle of  the page, "(B) continued.   Interest
in land Lockhart $150 00; Victoria, Jefferies, $25 00; 80 acres
land in Victoria, $160,00.   The above as they stood Sept. 9,
1856.   L. F. Chapman."   Certificate of acknowledgment " of
the instrument of writing marked (B)" February 16th, 1853; and
certificate of recording, same date, in " vol. 5th, deeds, pages
302 and 303."  Claimant then introduced Charles A. Johnson,
who testified that he was acquainted with the goods, trans-
ferred by the deed of trust, and with  the goods replevied in
this case ; and that the goods replevied were a part of the
goods transferred ; and that the goods, at the time  they were
replevied, were in a bad condition and greatly injured, and  ·

that he did not consider them worth more than fifty per cent, of first cost ; that he lived next door ; that the claimant, Linn. after he replevied the goods, sold them at auction ; that he was frequently present during the progress of said sale, and, from what he observed, he believed said goods were sold at a fair price.

Claimant then introduced the deposition of Chapman, to the effect that he made the assignment ; that the purpose of the assignment was to secure Linn and others as his sureties for the payment of the claims for which his property had been attached ; that the claims mentioned in the assignment were intended to be a correct copy of the amount owing from him to his creditors out of the State of Texas. When the said Linn, and others, agreed to become sureties for the payment of all claims, for which my property had been attached, said property was in the hands of the sheriff. But, when the Court announced that the suits of attachment were settled, the Sheriff placed the property in the possession of J. J. Linn, as my assignee, and the said Linn took possession, and remained in possession of the said property until the second attachment.

In answer to the question whether the property continued in the possession of Linn, or was delivered to witness or any other person by him, witness replied that he considered the property as remaining in the possession of Linn. And in answer to other interrogatories, he said that, after the assignment, the goods were kept in the same house as before, J. J. Linn paying rent for the house, and all the expenses for selling the goods ; that he was agent for said J. J. Linn, and was employed by him as such ; that after the goods were levied on the second time, he, as agent, effected a settlement with J. J. Linn, as assignee, and accounted fully for his agency to the best of his knowledge, and received his certificate that all was satisfactory ; that he was in no way connected with the property, assigned, except as agent, and received a moderate compensation therefor from J. J. Linn, assignee.

He further answered : I may have frequently signed my name without adding the word "agent," or the words "for J. J. Linn, assignee." If so, it was owing either to ignorance of my duty, or from the usual habit of signing as principal. I did not at first fully understand my duty, in some respects, whilst acting as agent, and may have committed errors, as mentioned. During the whole time of my agency, I supposed the public knew that I was acting as agent, and hence I may have been informal in signing receipts and other instruments of writing.

The attachment of my property was made during my absence. After it was made a considerable amount of property, principally in groceries and liquor, which was not under attachment, was applied by my agent, during my absence, to the liquidation of my home debts. This was done before the assignment was made ; and, when said deed was made, all the property I legally owned was embraced within the assignment, and applied to the purposes therein named ; the home debts, as aforesaid, being settled, directly or indirectly, with the proceeds of the said groceries and liquors, which had been previously applied for that purpose.

Here the claimant rested. The plaintiffs then called —— Beckford, who stated that he assisted the Sheriff to take an inventory of the goods, when they were levied upon by the attachments ; that the inventory amounted to the sum of $8,000 00 ; that he assisted the sheriff in taking an inventory of the goods levied upon under the executions, and which were replevied by the claimants. The inventory amounted to $3,916 35. In making the inventory we valued the goods at first cost in New York, as appeared by the original invoices, unless where they were badly damaged, when we valued them at what we thought they were worth. We considered the valuation fair. The goods were somewhat injured, whilst in the hands of the Sheriff under the executions, by rain. Witness was about the store the day the goods were released ; Chapman acted as though he had the management of the store ; witness was frequently

about the store from that time to the time of the second levy ; frequently saw the claimant, Linn, in and about the store ; frequently saw goods sold in the store ; they were sold cheaper than they were before the levy. Some, he noticed, were sold for cash ; dont know whether any were sold upon credit ; did not see goods sold and delivered upon a credit. Saw Chapman make one entry upon a book in the store in relation to money, paid out by him for taxes, licenses, &c., about $100 00. Did not know that Chapman paid any of his previous debts out of the store. Heard William Chapman tell his, witness', brother, that he would pay him a small debt, say about $15 00, which he owed him, out of the store.

Roselle, for plaintiffs, stated that, after the assignment, previous to the levy of the executions, Chapman purchased of him various articles of merchandise, nearly all small articles, for the use of his family, and amounting to $40 00, which was paid for with goods out of the store, got by witness during the same time. One of the items in the account was thirty-three yards of cotton drilling, purchased at cost, to retail in the store. This account at Rosell's, to the amount of $24 87, was paid in a balance due upon a note from W. W. Fowler (this name did not appear upon the schedule, neither among the notes, nor accounts) to Chapman.

J. O. Wheeler, for plaintiffs, stated that he did not know the date of the assignment ; was not at home at the time ; witness was a merchant ; he understood, and it was generally known, that the goods had been assigned to Linn ; Chapman and two other persons, the clerks of Chapman, before the assignment, seemed to transact the business in the house ; that he frequently saw Linn in the house, and about it ; that, between the time the goods were released from the attachment and the levy of the executions, he purchased goods and had an account in the house ; that, during the same time, Chapman purchased goods of witness, and his account was settled by deducting one account from the other and paying the balance to Linn, and the

account of Chapman against witness, receipted by Chapman in his own name. (Here followed an account of Chapman against witness, commencing Jan. 2, 1852, amounting at date of assignment to $61 28 (not in schedule C); at Dec. 19th, 1852, to $127 18. Dec. 31st, charge of "William Penn's account as agreed, $30 ;" (there was an account against "the steamer William Penn" for $43 25) from which was subtracted, without date or explanation, $39 30 ; and again, in same manner, $61 ; then "Rec'd. payment, L. F. Chapman.")

The witness further said : he had purchased other of the assigned goods to the amount of four hundred dollars, or thereabouts, for which he executed his notes to Linn, to whom he also paid the money ; that the goods levied upon and replevied, when replevied, were much injured, and he did not consider them worth more than fifty per cent. on first cost ; that if the first cost of the goods, as valued by the Sheriff, was $3,900, a sale of the goods for $2,800 was a good sale ; that witness saw Chapman in New Orleans after said assignment; that he stated, and witness understood, that he was there for the purpose of making some arrangement with his creditors, so that he could resume business.

Charles A. Johnson, for plaintiffs, stated that he was a merchant ; saw Chapman, in New York, after the making of the assignment, who stated that he was there for the purpose of arranging with his creditors, that he might resume business ; that he failed in making the arrangement ; that his store was next to the one in which said goods were sold ; frequently saw Linn about the store ; understood and considered that Chapman was clerk for Linn ; Chapman told him that he was so acting, and that Linn paid him a small salary, which assisted to support his family, and that he would remain until he could find something better to do. That the property replevied was the same that was levied upon by the attachment.

Parker, for plaintiffs, said that, between Dec. 1852 and April, 1853, L. F. Chapman purchased of Leavitt & Parker, princi-

pally small articles for the use of his family. The bill amount-
ed to $70, ten dollars of which was paid by Wm. Chapman ;
the residue, $47 35, was paid by L. F. Chapman, as witness
understood. The means, by which he paid said debt, were de-
rived from the goods which were assigned to Linn.

Plaintiffs read in evidence three letters written by L. F.
Chapman, as follows : Victoria, Jan. 26, 1853. Mr. E. Belden,
Lavaca. Dear Sir : Your favor of the 14th inst. came to hand
a few days since, and contents noted. On due enquiry I find
that I can deliver a double mattress, and in good style as they
can be made here, for from $5 60 to $6, depending on the quan-
tity of ticking. Should be happy to furnish you on these terms,
and, over and above what I owe you for the table and amount
for the safe not yet sold, to receive furniture at your own ware
rooms for the balance at your lowest cash prices. Hoping to
hear from you, &c. L. F. Chapman.

Feb. 9, 1853. Theodore Miller, Gonzales. My brother
William says you can send him a good horse, conditionally,
that he may return him if he dont suit. The balance above
your account with me I will pay in such things as I have in
store, at low prices. Let me hear from you by return mail,
and oblige, Yours, &c.

Feb. 9, 1853. Robbins, Lee & Co., Goliad. I have an op-
portunity of making a trade in which I can purchase a quantity
of ready made tinware at the lowest cash prices. This ware
is sold here at retail prices, freely from the tinner's shop, and
I have no occasion for it unless I can dispose of it. I should
be happy to furnish a bill on six months, with interest after
four until paid. Should you wish to purchase please send me
a list of the kinds desired, and it shall receive my immediate
attention. Please inform me relative to the Dutchman's ac-
count against you for $6.

The plaintiffs read in evidence their several executions and
judgments, the foundations of their levies. They also called
upon claimant for his books, &c., according to previous notice.

They were not exhibited, but claimant offered an account made out by himself to show his transactions as assignee, which was excepted to by plaintiff, and rejected by the Court.

Here the plaintiffs rested.

W. S. Glass, for claimant, stated that he was attorney in one of the attachment cases ; that the debt which he sued on was, at the time of the assignment, a subsisting debt against L. F. Chapman ; that it had been since paid ; that the assignment was well known in the town and community.

W. S. Cunningham, for claimant, stated that he and William Mitchell were the attorneys for two of the attaching credi- tors ; that the debts, upon which the said attachments were issued, were, at the time of the assignment, subsisting debts against L. F. Chapman.

The claimant then read in evidence an inventory of the sale of goods sold for $2,818.

The Judge instructed the jury without request, as follows : If the jury believe from the testimony, that the deed of sale, made by Chapman to Linn, was made in good faith by the par- ties, intending only in the best manner possible under the ex- isting circumstances, to protect the interest of his creditors he could, and that Linn, the claimant, so took the goods, to aid and assist in carrying out this intention on the part of the vendor, and without any fraudulent intent on his own part, or know- ledge of any fraudulent intent upon the part of the vendor, then the deed and transfer of the property would vest the title in Linn, the present claimant, and you should so find.

But, if you should believe from the evidence, that Chapman intended to defraud or delay his creditors by the transfer of the property, and that Linn, the vendor and claimant, was cognizant of this intention on the part of Chapman, and, know- ing this intention, nevertheless consented to take the transfer of the property, the deed would be fraudulent, and you should find that the property in controversy was subject to the execu- tion.

The claimant asked the Court to instruct the jury as follows : That if they found for the plaintiff they should find the value of the goods replevied ; which the Court refused.

The jury returned the following verdict : We the jury find that the assignment was made for the purpose of delaying the payment of the creditors, and that the property in controversy was subject to execution.

Upon this verdict the Court entered judgment to the effect that the claimant should return the property to the Sheriff within ten days, and that the plaintiffs recover of the claimant $391 65, being ten per cent. of the appraised value of the property, as returned by the Sheriff. Motion for new trial overruled.

Bill of exceptions by the claimant, as follows : Be it remembered that, upon the trial of this cause, the claimant objected to the testimony of Roselle in relation to his account with L. F. Chapman and the manner of the payment of the same, for the reason that it did not tend to prove the issue before the Court ; which objection was overruled, and the claimant excepted.

The claimant objected to the testimony of Parker, in relation to the account of Leavitt & Parker against L. F. Chapman, and the manner of its payment, for the reason that it did not tend to prove the issue before the Court, which was overruled ; claimant excepted.

The claimant objected to the testimony of Wheeler in relation to his account against L. F. Chapman, and the manner of the payment of the same, which was overruled and claimant excepted.

The claimant objected to the testimony of Beckford in relation to the claim of about $100, which he held against L. F. Chapman and the payment of the same, for the reason that it did not tend to prove the issue before the Court, which objection was overruled and claimant excepted.

The claimant objected to reading the three letters of Chap-

man, for the reason that they did not tend to prove the issue before the Court, which objection was overruled and claimant excepted.

The claimant excepted to the instructions given to the jury, and to the refusal of the Court to give the instructions asked by him.

Bill of exceptions by the plaintiffs, as follows : In this case the following, among other proceedings, were had. The burden of proof being upon claimant Linn, he offered in evidence deed of assignment of 9th September, 1852, to which plaintiffs excepted, on the grounds that it was void because made in contravention of the rules in bankruptcy ; that, upon its face, it appeared to be designed to hinder and delay creditors, and that the schedules referred to in it were not annexed. Assignment admitted ; and plaintiffs excepted.

The claimant offered several witnesses to prove the value of the goods in controversy, at the date of the replevin bond, and that the price they brought at a subsequent sale at auction, was a good sale of said goods, in the condition which they were at the date of the replevin bond, and that the amount of an invoice of said sale, in a book exhibited by claimant (from which plaintiffs afterward read the three letters included in the statement of facts) was the full value of the goods claimed at the date of the replevin bond. To all which plaintiffs objected. Admitted by the Court and plaintiffs excepted.

After the claimant had, concluded his testimony, plaintiffs moved to strike out from the evidence the deed of assignment, for the reasons stated in the objections to it on its admission, and for the failure of claimant to exhibit in evidence the schedule referred to in the deed, describing the property assigned, and also the testimony referring to the value of the property on the ground of irrelevancy to the issue ; motion overruled and plaintiffs excepted.

*J. J. Holt*, for plaintiff in error. I. I will cite no authori-

Linn v. Wright.

ties to show Chapman's right to make such an assignment. It was the recognized doctrine of the Common Law, and is the recognized law of this Court; and this case is stronger than ordinary assignments for the benefit of creditors, in this that there was a good and valuable consideration given by Edward Linn and others for said assignment at the time of its execution.

It has been contended that the deed is void for the reason that the effect of it is to hinder and delay the creditors of Chapman in the collection of their debts. This position is not tenable; all assignments of this kind have, to some extent, that effect, and such assignments are never set aside for that reason unless there is caused thereby an unreasonable delay, and such a delay as evidences a fraudulent intent on the part of the assignee as well as the assignor. (Tompkins v. Wheeler, 16 Peters, 106; Brook v. Marbury, 11 Wheaton, 78; Brashear v. West and others, 7 Peters, 608.)

II. The deed being valid upon its face, it can only be set aside by showing that the assignee acted in bad faith, and with a view and purpose of assisting Chapman in defrauding, hindering and delaying his creditors; and it has been insisted that the fact that the assignee employed the assignor as clerk is evidence that he so acted and intended. This I submit, does not tend to prove that fact. (Shattuck v. Freeman, 1 Metcalf, 11; Vermont v. Morton & Smith, 8 Dana, 247; Pearson & Anderson v. Rockhill, 4 B. Munroe, 296; Planters & Merchants Bank v. Clark, 7 Ala., 765; Tompkins v. Wheeler, 16 Peters, 106.)

No acts of the assignor subsequent to the execution of said deed, could divest the assignee of the title acquired under and by virtue of said assignment. (Green v. Banks, lately determined at Austin.) Then it was error to admit in evidence any of the acts of the assignor, unless those acts were such as showed that the deed was fraudulent on the part of the assignee in its inception; and I ask if the acts of the assignor,

as proved, were of such a character, especially when it was not shown that the assignee was aware of said acts.

It is believed to be a rule of universal application in both Courts of equity and law, that fraud must not be presumed ; that until it is proved, the presumption is in favor of the fairness of the transaction. (Turner v. Lambeth, 2 Tex. R. 365.) " If the object of the evidence was to prove fraud in obtaining " the discharge, it would not have conduced to that end if it " had been received, because we cannot presume fraud ; it must " be proven actually, or be a conclusion from facts that will not -" admit of any other conclusion consistently with fair dealing." (Tompkins v. Bennett, 3 Tex. R. 86.) Lord Hardwick : No actual fraud has been proved on the defendant, and circumstances of suspicion are not sufficient for the Court of Chancery to ground a decree. (1 Ves. Sen. 35.) Presumptions of fact are conclusions from particular circumstances, and as such presumptions are made upon the common principles of induction, they must of necessity correspond with and be adequate to account for the circumstance actually proved. (Matthew's Presump. Evi. 4.) Can we account for the facts proved by the defendants upon any other hypothesis than that the assignment was made as well on the part of the assignee as the assignor, for the purpose of defrauding, hindering, and delaying the creditors of the assignor ? I believe we can. The assignor was employed by and assisting the assignee in selling the property assigned, and it is but a fair presumption that what he did was done as the agent and under the instructions of the assignee ; that the debt to Beckford for taxes being a lien upon the property, he was instructed by, and paid it as the agent of, the assignee ; that being in the employ of Linn, and receiving wages for his services, the debts created by him for the daily sustenance and support of his family were paid with the assent of Linn in payment for his services ; that in attempting to settle with his creditors, his object was not to defraud but to so arrange his business that he might discharge

his debts to their satisfaction ; and in the attempted operations referred to in the letters, he was doing what every man in such a situation should do, attempting to make a support for himself and family. These are fair and legitimate conclusions, deducible from the facts proven, and leave not even a presumption or shadow of fraud.

III. The first instruction bases the validity of the deed upon the sole ground that Chapman made the deed as the best thing in his power to protect the interest of his creditors, and thereby narrowed down the examination of the jury to that point, while the law does not require that test to be applied to such an assignment. The jury no doubt construed it to mean the best thing for all the creditors ; which it obviously was not, and was not required to be.

As to the second instruction. The result of every such an assignment is to delay the creditors. I understand that an intention to delay, which would violate the deed, must be a fraudulent delay, one concocted purposely and arranged between the vendor and the vendee with the view, object and purpose of hindering or delaying creditors in the collection of their debts, and not such a hindrance or delay as would possibly or probably flow from the doing of an act which the law authorized to be done. (Hart. Dig. Art. 1452.) And from the verdict of the jury, it is evident that the jury did not consider that there was any fraud intended in the transfer ; by their finding they negatived the idea of fraud.

IV. The Court erred in refusing to give the instructions asked by the claimant. (Wright v. Henderson, 12 Tex. R. 43.)

V. The Court erred in overruling the motion to set aside the verdict and decree, and for a new trial.

Trials of the right of property under the Statute, as this Court has determined in several cases, are conducted without pleading, under issues to be formed by the Court. I submit that in a case like the present, where the right, if any, of the plaintiffs, rests upon a fraud in the assignment of the property

to the claimant, which vitiated the deed as to the plaintiffs, no evidence of such fraud can be received unless there is an issue formed putting that fact directly in issue, that the plaintiff may come prepared to answer the charge. There is no such issue in the present case.

*F. S. Stockdale,* for defendants in error. The deed under which the appellant claims the property, is a general assignment by a debtor, in failing circumstances, for the benefit of creditors.

In such an assignment, the intention of the parties to it—the object of its execution, is the test to be applied. Outside agreements avoid the deed both in law and equity. It must convey all the property of the assignor. It must give him no power to interfere with the proceeds or their appropriation. It must be free from provisions tending to hinder or delay creditors in the collection of their debts, (if this be the effect, must not be the object.) It must be free from secret understandings, either between the assignor and assignee, or the assignor and creditor, securing any benefit not secured and, provided for on its face. It must be for the benefit of the creditor, and in no sense for the benefit of the debtor. (Burrell on Assignments, 110, 111; 121 *et seq.;* Id. 234 *et seq.*)

The facts connected with the assignment must be taken with the deed, to find out the good faith of the parties. Outside agreements avoid the deed. (Burrell, 136; also Opinion of this Court on former appeal.)

The want of proper descriptions or schedules of the property, and limitations upon the responsibility of the assignee, are badges of fraud. (Burrell, 208, 209; Id. 240 *et seq.*; Id. 255; 4 Wheaton, 108; 5 Mason, 280; 7 Peters, 608.)

So, also, excess is presumptive evidence of fraud. (Burrell. 226 *et seq.*; Id. 247.)

Where the inducement to the trust is the hindrance and delay of creditors the deed is bad. (Id. 374, 375, 385.)

Appellant relies upon a distinction which he takes between this deed and a general assignment.

We submit that the interference of these sureties, places them in no better position than those whose debts they secure. Stipulating as they do for the assignment, to secure notes which are not to become due for nine, fourteen and nineteen months, which are to be first paid, if they are entitled to a different consideration at the hands of the Court, it must certainly be to their injury ; for they present no claim by these facts to indulgence.

If there be a sale of property with a full and valuable consideration, and the intention be to hinder and delay creditors, the sale, as to them is inoperative and void. No reason can be given for an alteration of this rule, where the conveyance is a deed of trust to secure particular creditors or even sureties. (Burrell, 226 *et seq.*)

The assignment is void *per se.* It is in contravention of the rules in bankruptcy. General assignments for the benefit of one or more preferred creditors, or for the creditors at large, have been uniformly condemned when in conflict with the bankrupt law. (Burrell, 12 *et seq.*) This character of assignment is in itself an act of bankruptcy. (Id. 16, note.) Where a bankrupt law exists the right to prefer is taken away. (Id. 121.)

The judgment was in exact accordance with the Statute. (Hart. Dig. 2814, 2818, 2820.) The case, referred to by counsel, as being against the ruling of the Court below, as to the value of the property, did not involve the question, or at least it was not adjudicated in it. (12 Tex. R. 43.)

*W. S. Glass*, also, for defendants in error.

WHEELER, J. The principal questions respecting the admissibility of evidence to invalidate the assignment, were deter-

mined when the case was before us on a former appeal. The rulings of the Court appear to have been in accordance with the opinion then delivered in the case, and, it is conceived, the well-settled rules of evidence upon the question of fraudulent intent in the making of a deed. Unquestionably the deed is to be received in the light of surrounding circumstances, in order to arrive at the real intention of the parties. Unquestionably the assignor, remaining in possession of the goods to dispose of them as agent for the trustee, must be deemed, *prima facie*, at least, to have conducted himself, in his dealing with them, in accordance with the understanding between himself and his principal. The latter was bound to take notice of the manner in which he conducted himself in his employment. What the agent did, the principal must be presumed to have assented to ; and it is not unreasonable to suppose that parties had contemplated in advance a line of conduct, which they are shown to have pursued. Although the employment of the debtor by the trustee is not forbidden by law, yet " if he be permitted, as " their agent, to use and control the assigned effects in a man- " ner wholly inconsistent with the purposes of the trust, and as " his own, it will be evidence that the assignment was not made " in good faith." (Burrell on Assignments, p. 174 ; Smith v. Seavitt's, 10 Alabama R. 92, 105.)

The fair and natural inference deducible from the evidence is, that the dealing of the parties with the goods, after the assignment, was consonant with their intention and private understanding at the time af making it ; and that it was intended not only to secure the preferred creditors and those who had incurred liability as sureties of the assignor ; but also to secure to the assignor himself certain benefits out of the property assigned, to the hindrance of other creditors in the enforcement of their rights. That such a purpose will render the deed fraudulent and void as to the deferred creditors, does not admit of question. To warrant the jury in so finding, it was not necessary that the circumstances tending to that conclusion

should have been incapable of being accounted for upon any other hypothesis. There is no such rule of evidence or principle of law, as that, in order to authorize a jury to deduce, from circumstantial evidence, the conclusion of fraud, the circumstances, must be of so conclusive a nature and tendency, as to exclude every other hypothesis than the one sought to be established. If the evidence is admissible as conducing in any degree to the proof of the fact, the only legal test applicable to it, upon such an issue, is its sufficiency to satisfy the minds and consciences of the jury. The question of fraudulent intent is a question of fact, which it is peculiarly within the province of the jury to decide. They are the exclusive judges of the weight of evidence ; and are to be guided in their decision by their conscientious judgment and belief under all the circumstances of the case. (1 Stark. Ev. 474 ; 1 Tex. R. 326.) What amount or weight of evidence shall be sufficient proof of such intent can never be matter of legal definition. The law, therefore, refers the weight of evidence, and the degree of probability to the jury ; and the only test which can be applied is its sufficiency to produce a satisfactory conviction or belief in their minds.

Deeming the evidence, extrinsic of the deed, sufficient to warrant the verdict, it is unnecessary to decide upon the intrinsic validity of the instrument. It is not proposed therefore to notice all the objections taken to it. But there is one which seems deserving of notice, especially as the Court may again be required to pass upon it : that is, that the schedule referred to in the deed as containing a description of the property, and as being annexed to the deed, was not annexed, nor produced in evidence. There certainly should be a description of the property conveyed, either in the body of the instrument or in a schedule annexed to it. Without such a description, or some such reference, as to render the property capable of being ascertained and identified, the deed will not ordinarily operate a transfer of the title. There must in general be some such

Vol. XVIII.          22

description or reference to the property, or the deed will be
inoperative and invalid.   But it is immaterial whether it be
given in the body of the instrument, or in a schedule annexed,
to which reference is made.   The latter is the usual method,
where the property is considerable in amount, or consists of a
variety of particulars.   " When schedules are intended to be
" prepared, and are referred to in the assignment, they should,
" in strictness be prepared before the assignment is drawn ; or,
" at any rate, be in readiness, so as to be annexed to the instru-
" ment before it is executed.   In some cases, however, where
" time has not been allowed for the preparation of schedules,
" particularly those of the property assigned, an assignment ex-
" ecuted without schedules, and only referring to them, as ' to
" be made out and annexed,' at a future time, has been adjudged
" valid."   (Burrill on Assignments, 247.)   "If possible, these
" schedules should be completed and annexed to the assignment
" before execution ; but this is sometimes dispensed with.  The
" general rule on this subject appears to be this, that the mere
" omission to annex the usual schedules, is not, in itself, suffici-
" ent to avoid the assignment.     *     *     In some instances,
" and when taken in connexion with other circumstances, this
" fact of omission may be considered a badge of fraud.   But the
" inference of fraud may be repelled by various circumstances.
" Thus, in Massachusetts, where the assignment itself contained
" a proviso that schedules were to be made out as soon as
" might be, the presumption of fraud was held to be removed.
" So in New York, where full schedules were presented to the
" Court, in answer to a bill filed by a judgment creditor, the
" inference of fraud was held to be repelled. So if the property
" be described in the assignment with sufficient certainty to ena-
" able the assignee to take possession of it, the omission to an-
" nex a schedule, though provided for in the deed, will not ren-
" der the assignment void.   And if possession accompany the
" transfer, and the transaction be, in all other respects, fair,
" the mere want of a schedule will not render it fraudulent.

"Want of a schedule is less suspicious where the whole of the "assignor's property is conveyed, for the benefit of all creditors, "than where part of it is conveyed for particular creditors." (Id. 254, 255, 256.)   A mere imperfection in the description of the property will not have the effect of invalidating the instrument ; and a description in general terms has frequently been held unobjectionable ; as where the property was described as the cargoes of certain vessels named, without invoices, bills of lading, or valuations ; and real estate lying in Boston, Charlestown, and Maine, without a particular description of each parcel ; it was held that, as the description could be made certain by the reference given, it was sufficient.   (Id. 240, *et seq.*

The authorities on this subject are reviewed at considerable length in Mr. Burrill's treatise ; and the general rules deduced.   The extracts and references we have given may suffice to indicate the law as applicable to the present case.   The description of the property given in the deed is contained in the following clause :   " All and singular my stock in trade, con-" sisting of goods, wares and merchandise, and named in the "schedule hereunto annexed, dated August 24th, 1852, marked " B ; also, all my notes and accounts due me by debtors, a sche-" dule of which, with the names of the debtors, and the amounts " due by them respectively is to be made and hereunto annexed, "marked  C."   " All my stock in trade, consisting of goods, wares and merchandize," is certainly very indefinite ; but perhaps not so indefinite as to be incapable of being rendered certain by proof.   But it seems the schedule of the 24th of August, containing a particular description of the property, had been prepared previously to the making of the deed, which bears date on the 9th of September following.   Why the schedule was not annexed, does not appear.   Its absence is certainly a suspicious circumstance ; and unless explained, or unless there was satisfactory proof of what property was included in the general reference " all my stock in trade," so that it

might certainly appear for what the assignee is responsible ; whether the property was not greatly more than sufficient to satisfy the preferred creditors ; and what particular property was, in fact, embraced in the assignment ; the Court, it would seem, might well have sustained the motion of the appellees to exclude the assignment from the consideration of the jury. For undoubtedly it was the right of the deferred creditors, to have all the security against abuse of the trust by the assignee, which it was the apparent purpose of the deed to afford ; and to be fully informed as to the disposition which the assignor had made of his property. They ought not to be bound by any assignment, which was effected in such a manner, as not to enable them to hold the assignee or trustee responsible for all the property conveyed, or as to needlessly embarrass their remedy against him in case of his delinquency ; or which, in any manner concealed the real transaction, and rendered it, in any of its parts, not readily accessible to their observation, and the eye of the Court, in case of the necessity of a resort to legal process for the protection of their rights.

It is not perceived that there is anything in the charge of the Court which is erroneous, or was calculated to mislead the jury. Instructions will not be deemed erroneous, merely because they do not embrace every aspect in which the law applicable to the case might have been presented to the jury. If the charge of the Court was thought to be imperfect or incomplete in its presentation of the law of the case, it was the right of the party to supply any supposed omission or imperfection by asking the proper instruction. Where this has not been done, the mere omission of the Court to give instructions which would have been proper, is not error. The word " delay" was evidently employed in the charge of the Court, and was doubtless understood by the jury, in the sense in which it is used in the Statute ; not merely in reference to a question of time, but to the interposition of obstacles in the way of creditors with the fraudulent intent to hinder and delay. In

Linn v. Wright.

that sense, it was properly held to invalidate the assignment. (Burrill, Chap. XXII.)

Without deeming it necessary to examine more particularly at present the errors assigned, in reference to the ingenious and able argument of counsel for the appellant, on the question of the validity of the assignment, we conclude that they disclose no sufficient ground for reversing the judgment.

But in the ruling of the Court refusing to instruct the jury to find the value of the property, we are of opinion there is error. In order to render the judgment contemplated by the Statute, (Hart. Dig. Art. 2818,) it is essential that the value of the property should be ascertained. In taking the bond from the claimant, the Sheriff is required to assess the value of the property. (Id. Art. 2814.) But this, it seems evident, was intended for the purpose of fixing the amount of the bond to be given by the claimant. Where the parties acquiesce in the estimate of value adopted by the officer, it has been held that it might be taken to be the true value, for all the purposes of the rendition and enforcement of the judgment. (Wright v. Henderson, 12 Tex. R. 43.) But it has never been supposed that the Sheriff's estimate of the value was conclusive upon the parties. The contrary opinion has been entertained. (Id. 46.) The subject will be found to have been sufficiently examined in a case decided at the last Term at Tyler, not yet reported, (17 Tex. R. 57.—REPS.) upon the construction of 7th Section of the Statute. (Hart. Dig. Art. 2820.)

As the case will be remanded, it is proper to notice the objection, that the issue was not properly made, so as to admit evidence to impeach the assignment as fraudulent. Although the Statute provides that the Court shall direct the issue to be made up, (Hart. Dig. Art. 2816,) yet the form and manner of making it are left to the parties. The issue was accordingly made, propounding the question, in the most general terms, of the claimant's right of property in the goods. The only pleading before the Court, at the time of forming the issue, was what

purports to be  the  claimant's  answer ;  in  which  he  did  not
plead his title, or notify  the plaintiffs,  or  the  Court, on what
title he intended  to  rely to maintain his  claim to the property.
Not having pleaded  his  title, the  plaintiffs  could  not  be re-
quired to plead, in avoidance of it ;  nor could  other  issues  be
made, than that which was made, upon the bare claim of property.
The  issue  was  what the claimant made it ;  and  under such an
issue the greatest latitude of proof must necessarily be admitted.
The plaintiffs could  not be required  to anticipate the claimant's
evidence of title, and plead to it ; they are not supposed to have
known in what it consisted.    When produced in evidence, they
must  be allowed to introduce evidence to impeach its validity.

It  does  appear  that after  the issue was made up, the claim-
ant filed an  " amended answer" in  which  he  pleaded speci-
ally his title.    But it  does not appear  to  have been by leave
of the Court ;  nor  does  it  appear  that either  the plaintiff
or the Court had notice of  it.   After the formation of the issue
under the Statute, the parties were not bound to anticipate fur-
ther pleadings ;  and unless in some manner brought to the at-
tention of the Court, or the notice of  the party, in time to re-
ply to or take issue upon them, they cannot properly be consid-
ered as changing the issues  previously  formed, or as affecting
the right to introduce evidence applicable to those issues.  Had
the claimant pleaded his title in the  first  instance, or  had his
amended answer been filed before the  issue  was  made up, or
had it been brought to the notice of  the Court  and  the oppo-
site party when filed, the latter  might have  been  required  to
plead specially the matter relied on to  invalidate it, in order
to the formation of  the  appropriate issues, and the  admission
of evidence to impeach the title.  But the case must be viewed
as having gone to trial upon the issue as  made up by the par-
ties under the direction of the Court ;  and  upon  the state of
the record, to admit the deed  of assignment in  evidence, and
then to have excluded the  evidence offered  to  invalidate it,
would have operated a surprise, and manifest injustice to  the

plaintiffs. The objection to evidence, therefore, on the ground of its supposed want of relevancy to the issue, was not well taken.

But because the Court erred in excluding evidence of the value of the property, and refusing to instruct the jury, at the instance of the claimant, to find its value, the judgment must be reversed and the cause remanded.

Reversed and remanded.