**SPADRA-CLARKSVILLE COAL CO. v. SECURITY NAT. BANK OF DALLAS.** (No. 8002.)

(Court of Civil Appeals of Texas. Dallas. June 29, 1918. Rehearing Denied Nov. 9, 1918.)

1. BANKS AND BANKING ☜═101—EFFECT OF ULTRA VIRES CONTRACT—TITLE TO PROPERTY.

Where creditor bank agreed with debtor, insolvent coal company, to purchase and pay for coal sufficient to supply company's trade and pay operating expenses, president of com-

pany to act as bank's agent for sale and delivery, and net proceeds from business to be applied to company's debt to bank, title to coal purchased pursuant to such agreement, and turned over to the president of the company, remained in the bank as between it and the company, although agreement was ultra vires as to bank.

2. BANKS AND BANKING ☜═101 — ULTRA VIRES CONTRACTS—RIGHTS OF CREDITORS.

Creditor of insolvent coal company would have no greater right to levy upon and sell coal purchased by bank, another creditor, pursuant to agreement with company to supply its trade, than the coal company would have to claim ownership therein, although agreement through which bank acquired coal was ultra vires to its charter.

3. FRAUDULENT CONVEYANCES ☜═44—TAKING OVER BUSINESS OF INSOLVENT COMPANY—"FRAUDULENT PURCHASE."

Purchase by creditor of coal company of sufficient coal to supply company's trade, and placing coal in hands of president of company, who was to act as creditor's agent in its sale and distribution, creditor to pay operating expenses and have net proceeds, held not, as to other creditors of the company, fraudulent within Vernon's Sayles' Ann. Civ. St. 1914, art. 3966, 3969, or 3970, the company never having any title or interest in the coal.

4. BANKS AND BANKING ☜═101 — ULTRA VIRES CONTRACTS—WHO MAY QUESTION.

Ultra vires of a bank cannot be the basis of an action against, or a defense by, the bank; but the government alone may complain, in a proceeding to forfeit bank's charter, that bank exceeded its charter powers.

5. EXECUTION ☜═192 — ALLEGATION AS TO TITLE—SUFFICIENCY.

In suit between creditors involving title to coal purchased by defendant creditor to supply debtor coal company's trade, allegation of ownership in defendant and coal company's possession as its agent was, in the absence of exceptions requiring a particularization of claim of title, sufficient to admit proof of contract between defendant and coal company.

6. APPEAL AND ERROR ☜═1056(4) — EXCLUSION OF EVIDENCE—HARMLESS ERROR.

Refusal to permit witness to answer on ground that fraud was not alleged was at most harmless where court found as true the very facts comprehended in the question.

7. APPEAL AND ERROR ☜═1041(4)—REFUSAL TO PERMIT AMENDMENT—HARMLESS ERROR.

Refusal to permit amendment of pleading so as to allege fraud established by evidence was harmless where the court found as a fact all that proof under such amendment would have developed.

Rainey, C. J., dissenting.

Appeal from Dallas County Court; T. A. Work, Judge.

Suit between the Spadra-Clarksville Coal Company and the Security National Bank of Dallas. There was judgment in justice court for the latter, appeal to the county court resulted similarly, and the former appeals. Affirmed.

Harry L. Obenchain, of Dallas, for appellant. Leake & Henry and W. L. Mathis, all of Dallas, for appellee.

RASBURY, J. This is an appeal from the judgment of the trial judge awarding to appellee, in a suit of the trial of the right of

property, the title and possession of certain coal.

The facts upon which the trial court based its judgment are not controverted, and those essential to an intelligent consideration of the issues presented are these: On January 17, 1917, the Montgomery Coal Company, formerly engaged in retailing coal, was insolvent, without coal to supply its customers or funds with which to purchase same, and indebted to various creditors, including appellant and appellee, the latter's debt being approximately $1,400, secured by chattel mortgage on all the tangible property of the coal company, consisting of horses, wagons, harness, trucks, etc. The mortgaged property was insufficient in value to satisfy appellee's debt. With full knowledge of the insolvent condition of the coal company, and for the purpose of raising money with which to pay the coal company's debt, it was agreed between appellee and Thomas Montgomery, president of the coal company, that the former would, on its own account, purchase coal sufficient to supply the trade, Montgomery to act as agent for appellee in the sale and delivery thereof. Appellee was also to pay all expenses of operating the business, such as yard rent, clerks, laborers, and teamsters. The net proceeds from the business were to be applied to the payment of the coal company's debt to appellee, save an allowance to Montgomery, the amount of which is not shown by the record. The coal bought under the agreement was paid for by checks drawn on appellee bank in favor of coal dealers with bill of lading for coal attached, and signed "Montgomery Coal Company, by Thomas Montgomery, President," accompanied by the word "special," and were paid by appellee only when approved by D. D. Rodgers, who was an employé of and had the matter in charge for appellee. The coal was not purchased on the credit or with the money of the coal company, and it was neither the intent nor purpose to vest title to the coal in the coal company, but to retain same in appellee. The coal was daily exposed for sale at the coal company's former yards, and when sold was delivered in the coal company's wagons, trucks, etc. The coal company's billheads and C. O. D. slips were used in rendering statements to customers. While it is not disclosed by the statement of facts, it appears from the court's findings of fact that the appellant on December 18, 1916, recovered judgment against Montgomery Coal Company for $149, and costs. On March 8, 1917, execution therefrom was levied upon the coal in controversy, which was afterwards claimed by appellee under the statutory remedy indicated. Issues were voluntarily tendered by the parties in that proceeding. There was trial in justice court, resulting in judgment for appellee; appeal to and trial in county court, resulting similarly. In the latter court findings of fact were prepared and filed by the court reflecting the facts just recited in detail.

There are a number of assignments of error, but in our opinion, upon analysis, they present, aside from certain matters of procedure, but two contentions, which, in our own language, are: (1) That appellee bank cannot maintain a suit for the trial of the right of property in the coal in controversy for the reason that its title thereto has its source in acts ultra vires its charter, and that as a corollary the title as to creditors is in the Montgomery Coal Company; and (2) that the manner in which the sale of the coal was conducted under the agreement was as to creditors fraudulent, and as to them placed the title in the Montgomery Coal Company.

[1] As to the first contention it may be conceded, but not determined, that the contract between appellee and the coal company was ultra vires as to the appellee, yet it is not conceivable that that fact would pass title to the coal to the coal company. Whether title passes depends on the intention of the parties and a compliance with the formalities provided by law in a given case. Government may penalize corporations for acquiring title when forbidden by law, and may require the corporation to divest itself thereof. But that fact will not reinvest the seller with the title or invest it in another. We know of no rule of law or equity which will, as between appellee and the coal company, warrant such holding. The coal company contributed nothing with which to purchase the coal. It is without dispute that appellee purchased it and that the coal company had possession of it as agent for appellee under the contract stated. The contract was for its benefit and to enable it to pay the debt due appellee. Bond v. Terrell Cotton & Woolen Mfg. Co., 82 Tex. 309, 18 S. W. 691. We therefore conclude that, as between the appellee and the coal company, the title to the coal was at all times in the former.

[2] If, then, the title, as between appellee and the coal company, was in the former, even though acquired ultra vires its charter, appellant had no greater right to levy upon and sell it as the coal company's property than the latter had to claim ownership therein. That being true, it brings us to the other ground, that as to creditors the coal company's possession under the agreement was fraudulent and constituted ownership and authorized levy. We believe such contention also unsound.

[3] One undoubtedly has the right to place his property in the possession of an agent for sale on such terms as the parties may agree upon, subject to the rights of those who purchase same or acquire rights therein for value without notice of any limitations on the authority of the agent or the actual ownership of the property. According both to the undisputed evidence and the court's

findings the coal company was in possession of the coal levied upon as agent of appellee. In what respect was that in fraud of any rights of appellant? No assets of the coal company to which appellant was entitled to look as security for its debt was withdrawn from its reach. Nor did its funds or credit contribute to its purchase. This is not a case within the provision of article 3966, Vernon's Sayles' Civil Statutes, prohibiting the gift, conveyance, assignment, or transfer, etc., of property to hinder, delay, or defraud creditors, or of article 3969, prohibiting the loan of chattels for a longer period than two years, or of article 3970, declaring void mortgages, trust deeds, or other liens by the owner upon a stock of merchandise daily exposed for sale in the regular course of business, as is contended by appellant. Those statutes contemplate ownership in the property so transferred, loaned, or mortgaged. The case of Texas National Bank v. Lovenberg, 63 Tex. 506, and kindred cases relied upon by appellant, are cases where ownership was in the debtor. Examination of the case cited discloses that a merchant attempted to secure the bank in payment of its debt by what was held to be a mortgage on merchandise belonging to the merchant, and daily exposed to sale in the regular course of business, and as a consequence void against the assignee in a subsequent general assignment for the benefit of creditors. In that case of course the security of the creditor was withdrawn from his reach in a manner prohibited by law. Here, however, the coal company never at any time had any title to, or interest in, the coal levied upon.

[4] The fact that appellee's acquisition of the coal may have been ultra vires of its charter confers no right upon appellant, since the rule is that such acts cannot be the basis of an action against, or a defense by, the bank. Of such acts the government alone may, in a proceeding to forfeit the bank's charter, complain. 3 Michie, Banks & Banking, 2005.

[5] Appellant upon trial objected to proof of the contract between the bank and the coal company on the ground that it was not sufficiently pleaded. The parties voluntarily tendered issues at trial, appellant, as plaintiff below, denying that appellee had ownership or interest in the coal, and that same was by the coal company exposed for sale in the ordinary course of business, hence void, and subject to levy, execution, etc. Appellee, defendant below, answered that it was sole owner of the coal, and that the coal company never owned or had title to same, and, if it was in possession of same at time of levy, it was so as the agent of appellee. The general allegation of ownership in appellee and the coal company's possession as its agent, in the absence of exceptions requiring a particularization of the chain of title, was sufficient to admit proof of the contract between appellee and the coal company. Linn v. Wright, 18 Tex. 317, 70 Am. Dec. 282; Emerson v. First Nat. Bank, 25 S. W. 433.

[6] Counsel for appellant at trial asked the witness Montgomery, president of the coal company, if it "is not a fact that your company was insolvent, with several judgments against it, and the bank was aware of this condition, and you entered into this arrangement to get the bank to assist your company, to the exclusion of the other creditors and in preference of the bank"? The court refused to permit the witness to answer on the ground that fraud was not alleged, which action of the court appellant assigns as error. In connection with the issue so presented, and without reference to the pertinency of the question under the pleading, the court found as true the very facts comprehended in the question, save that the purpose was to exclude other creditors and prefer the bank, and hence, in view of such findings by the court, the point, at most, discloses harmless error. As to whether the witness should have been permitted to affirm or deny that the purpose of the agreement was to prefer the bank and exclude the other creditors from the profits of the venture is, in our opinion, immaterial. Ownership of the coal having at all times been in the bank, it had the right to use it for its own benefit and to the exclusion of the creditors of the coal company.

[7] With reference to the exclusion of the foregoing testimony, on the ground that the pleading did not sufficiently aver fraud to admit same, the appellant asked permission of the court to amend its pleading in conformity to such ruling. The request was refused, and the action of the court in that respect is assigned as error. As we have shown, the court found as a fact that the coal company was insolvent, with several judgments against it, of which the bank was fully informed, and, if the appellant was entitled to amend its pleading, it nevertheless appears that the court found as facts all that proof under the amendment would have developed. As a consequence, if appellant was entitled to amend his pleading to meet the court's ruling in that respect, concerning which we express no opinion, all such matters, in view of the findings of the court, are immaterial, and constitute at most harmless error, since it does not appear that the error amounted to such denial of the appellant's rights as was reasonably calculated to, and probably did, cause the rendition of an improper judgment.

There are assignments complaining of the admission of testimony tending to prove the agreement between appellee bank and the coal company on the ground that such testimony was inadmissible because the agreement was void, because ultra vires of appellee bank's charter, and for fraud. These assignments will be overruled in consonance

with our holding on those issues stated at another point in this opinion.

Finding no reversible error in the record, the judgment is affirmed.

RAINEY, C. J., dissents.