Helm, J.
Plaintiff sues in this action as the widow and sole heir at law of Joseph H. Lathrop, deceased. She seeks to obtain title to 300 feet of the Emma mine, and to cancel a certain deed and receipt given by herself to defendant, Pollard, in compromise or settlement of their disputes in connection therewith; she also demands an accounting as to the proceeds of said premises during the period of his control and management thereof.
The theory of the complaint is, that from 1873 until 1879 Pollard held and operated the mine as trustee for the sole use and benefit of Lathrop; and that after the death of Lathrop in 1879, plaintiff became the beneficiary in such trust, vested with precisely the same title and rights in and to the trust estate as were possessed by her said husband at the time of his decease.
The complaint also alleges a settlement of the matters in dispute between herself and Pollard, but seeks to avoid the same on the ground that it was fraudulent in law and void.
One Charles H. Curtis, who was originally a co-defendant with Pollard, procured an interest in the premises through this settlement; but after hearing, and before decree, plaintiff voluntarily dismissed her action as to him, and his connection with the case will only indirectly affect our consideration of the questions involved.
After a specific denial of the material allegations of the complaint, the defendant, Pollard, in his separate answer, affirmatively alleges absolute title in himself to the disputed lode; but admits an understanding or agreement between himself and Lathrop to sell the latter a half interest therein upon payment by him of one-half of the purchase money originally expended therefor, together with one-half the cost of developing, procuring title and defending the same; he also alleges that he had determined to give plaintiff the full benefit of *474 such agreement, but relies upon the compromise referred to in the complaint as a full and complete discharge of all his obligations to plaintiff in connection with the premises.
Certain questions of fact were submitted to a jury, who, upon hearing the evidence, found that Lathrop furnished the money to purchase the whole of said premises, and that the title thereto was taken in the name of Pollard, with the agreement that he hold the same for the use of said Lathrop, without, any beneficial interest himself therein; that from the date of purchase in 1873 until the death of Lathrop, the lode was worked at the cost of Lathrop; and that Pollard obtained a patent at the expense and request of Lathrop. They also found, that at the time of the alleged settlement, plaintiff’s mental and physical condition was such as that she might have understood the nature of the contract and instruments she had executed, and finally, the following question was put, and answer returned by them, viz.: “At the time of such alleged settlement was there any fraud or undue influence practiced upon plaintiff by either of the defendants, or by any one for them, or either of them? If so, by whom was such fraud or undue influence practiced? And did she, by reason of such fraud or undue influence, make the contract, and agree to the settlement, and execute the conveyance spoken of and referred to in the pleadings?”
Answer: “Yes. Curtis.”
One of counsel for appellee undertakes in his argument to show that the first four findings of the jury were contrary to the evidence, and should be disregarded. There is a good deal of conflict in the testimony, but after a patient and careful consideration thereof, we have concluded that the findings of the jury ought not to be disturbed. It was peculiarly their province to settle such disputed questions of fact, and there is amply sufficient in the record to support their conclusions.
These findings establish a resulting trust in favor of Lathrop, and upon his death Pollard continued as trustee, with plaintiff as beneficiary; the trust estate being the whole of said premises.
Appellee relies upon the proposition that the original conveyance to himself of said lode, admitting that Lathrop paid *475 the purchase money therefor, and became the owner thereof, was procured to be made by Lathrop for the purpose of hindering, delaying and defrauding his creditors; and, therefore, as between Lathrop and himself, such conveyance was binding; that plaintiff, who stands in Lathrop’s shoes, cannot come into a Court of equity with clean hands,, and is in no position to compel a re-conveyance of the property.
There is no doubt about the existence of the rule as contended for by counsel. When one executes a conveyance of real estate to another for the purpose of hindering, delaying or defrauding his creditors, equity will not compel a re-conveyance of the same, in an action by such fraudulent grantor against his grantee; and we agree with counsel that the rule is the same where one pays the purchase money, and procures the conveyance from his vendor to a third person with such intent; we also concede the doctrine that the heir at law of the party executing such fraudulent conveyance is generally in no better position than his ancestor with reference to the property conveyed.
Such conveyance is voidable at the suit of the creditors defrauded, and the grantee is in law a trustee for the benefit of such creditors. But Courts will ordinarily not interfere as between the original parties to the fraud, either to assist in the consummation thereof or to protect against the injuries resulting therefrom.
But in a case like the one before us, where defendant, in a Court of equity, relies upon a defense which he has not stated in his answer, and which could not be so stated because inconsistent with the one set up therein; a defense which rests solely upon a fraud, to which he was himself a principal and willing party; and where the lips of the other party to the alleged fraudulent transaction are sealed by death, and therefore defendant cannot be met with direct testimony in contradiction, the fraudulent intent of such deceased party should be clearly and unequivocally established.
In the affidavit filed by Pollard in support of his motion for a continuance, and admitted as evidence under the statute, he states that Curtis, if present, would swear that plaintiff told him that, owing to judgments ^against Lathrop, he “could not *476 bave any property or thing in his own name, and, Pollard being his friend, he had put the Emma lode into his name, and he held the title to it so as to keep it from his creditors.” And while giving his testimony Pollard made the following statements: “I stood between Lathrop and his creditors, to keep them off.” “Men were coming to me every two or three days to find out whether Lathrop had any interest in the Emma mine.” He also testified that on one occasion he said to plaintiff: “Every particle of property you have got in Clear Creek county you owe to me keeping whatever interest you have from Lathrop’s creditors.” •
The foregoing, together with a few other declarations of Pollard upon the witness stand, which are not free from ambiguity, constitute the strongest evidence we have of fraudulent intent on the part of Lathrop in procuring the conveyance to Pollard of the said Emma lode; and, in so far as they bear upon this question, they are directly contradicted by Pollard himself. He alleges in his sworn answer that Lathrop had nothing whatever to do with the original purchase of the premises, and that he, Pollard, bought the same for his own use and benefit, and paid the purchase money with his own funds; that neither then nor at any subsequent time did Lathrop have any right to or interest in the same, except through a “tacit” understanding that he might buy of Pollard the undivided one-half thereof. And in his testimony Pollard says, in speaking of Lathrop, “I did not consider that he had any legal interest in the lode at all, but, in consideration of what he had done up there, I proposed to give him a half.”
In view of the foregoing and other inconsistencies and conflicts in his testimony, appellee cannot complain if we decline to give it any weight whatever in considering the intent with which Lathrop procured the original conveyance of the mine to Pollard.
The judgments against Lathrop, admitted, were obtained long subsequent to the execution of the alleged fraudulent conveyance, and the evidence of existing indebtedness at the date of such conveyance is not of itself sufficiently strong to sustain the charge that such instrument was executed for the purpose of defrauding Lathrop’s creditors.
*477 We come now to the consideration of the settlement.
Pollard was a trustee holding title to the entire lode for the exclusive use and benefit of plaintiff; while acting in that capacity he made a compromise through Curtis, with his cestui que trust, by means of which he became the owner of one-half of the trust estate. Is that compromise or settlement fraudulent in law and void, notwithstanding the silence of the jury, as to Pollard, in answering the question quoted in full herein?
The general rule is that a trustee, while the fiduciary relation exists, cannot, directly or indirectly, become the purchaser of the trust estate which is confided to his care. Michoud v. Girod, 4 Howard, 552; 1 Leading Cases in Equity, note 239 et seq.; 1 Perry on Trusts, Sec. 428, note 5.
The relations of the trustee to the trust estate are such as to place many of his acts in connection therewith practically beyond the most searching scrutiny of the most learned, conscientious and industrious chancellor. Self-interest may overcome the trustee’s sense of duty and lead to the practice of imposition and fraud, which can never be revealed in a Court of justice, and hence the adoption of the foregoing general rule. As another has aptly Said, “in this conflict (between self-interest and duty) the law wisely interposes; it acts not on the possibility that, in some cases, the sense of duty may prevail over ’the motives of self-interest, but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence and supercede that of duty.” Mr. Justice Wayne, in Michoud v. Girod, supra.
A few exceptions to the general rule seem, however, to be established by a preponderance of authority. Lord Eldon thus states one of these exceptions: “The trustee may buy from his cestui que trust, provided there is a distinct and clear contract, ascertained to be such after a jealous and scrupulous examination of all the circumstances, that the cestui que trust intended the trustee to buy, and there is no fraud, no concealment, no advantage taken by the trustee. I admit it is a difficult case to make out, whenever it is contended that the exception prevails.” (Coles v. Trecothick, 9 Ves., 234.) And it is now announced as the “better doctrine that a trustee may purchase *478 of the cestui que trust,-or accept a benefit from him, but the transaction must be beyond suspicion, and the burden is on the trustee to vindicate the bargain or gift from any shadow of suspicion, and to show that it was perfectly fair and reasonable in every respect, and Courts will scrutinize the transaction with great severity.” 1 Perry on Trusts, Sec. 428 and note 1; Hill on Trustees, *537, note y.
The foregoing exception applies to cases where the trustee makes no claim to the trust estate, in conflict with the interest therein of the cestui que trust; and where he makes no denial of the title or right of the beneficiary; but where he purchases from him, the latter being sui juris, and having full knowledge of all the facts relative to the condition and value of the property, and all his rights in connection therewith; where his act is entirely voluntary; and where no fraud is perpetrated upon him, and no undue influence exercised over him.
Can it be said that Pollard comes within this exception?
According to the findings of the jury, he was a trustee holding title to the entire lode for the use and benefit of plaintiff; no effort was made to show a termination of this fiduciary relation; and no such effort could be m&de, because appellee’s theory is, that such relation never existed. The evidence clearly establishes the fact that he repudiated the trust, denied plaintiff’s equitable title, and asserted absolute ownership in' himself, to the entire trust estate. The evidence also shows that he declined to treat with plaintiff because of their unfriendly relations; and made the compromise , or settlement through her agent, whom the jury find perpetrated fraud upon her in connection therewith; in the compromise thus effected, he acknowledged her interest in one-half of the trust estate only upon condition that she quit-claim to him the other half thereof.
The silence of the jury with reference to him, in answering the question quoted, is not a proper vindication from the charge of fraud or undue influence, or advantage in the settlement. It is no compliance with the rule devolving upon him the burden of “ vindicating the bargain (i. e., compromise), from any shadow of suspicion.”
The fact that through his legal title to the premises, his *479 possession thereof and control of the business, together with his denial of plaintiff’s title, he procured a settlement so beneficial to himself is amply sufficient to vitiate the transaction. We know of no decided case, however favorable to purchases by the trustee, which would sanction our action in sustaining this settlement. Regarded as an attempt to purchase a part of the trust estate, it cannot stand; and it is, if possible, less entitled to recognition as a valid release of Pollard from his breach of the trust.
E. 0. Wolcott, Mitchell & Palmer, for appellant.
S. II. Shvpherd, W. T. Hughes, L. C. Rockwell, for appellee.
Appellee’s point that Lathrop’s debts at the time of his death, “exceeded the value of the mine,” and that plaintiff “could have no interest without the creditors sacrificing their claims against the estate,” and, therefore, that she cannot recover in this action, is not well taken.
We might respond that, under our statute, unless she had an interest in the property, the creditors could have no legal claims against the same; for immediately upon Lathrop’s death whatever title he held therein descended to plaintiff; the interest thus inherited by plaintiff was subject to the payment of Lath-rop’s debts, provided there was not sufficient personal property to discharge the same, whether the legal title remained in Pollard, or was transferred to plaintiff. If she succeeded in her action, the rights of the creditors would not be interfered with in the least; on the contrary, it would be much easier for them to subject the property to the payment of their debts; for she would have relieved them from the difficult task of proving that Pollard held the same in trust for Lathrop at the time of the latter’s decease.
The judgment will be reversed and the cause remanded.

Reversed.