## No. 11,180.

SOUTHWORTH, ET AL. *v.* HUFFAKER, ADMINISTRATRIX.

Decided April 26, 1926.   Rehearing denied May 17, 1926.

Action to recover corporate stock and for an accounting.   Judgment for plaintiff.

## *Reversed.*

1.  FRAUD—*Executors and Administrators.*   Where one previous to his death conveys property with intent to hinder, delay and defraud his creditors, his personal representatives and heirs stand in the same position with relation to the property as would the decedent.

2.      *Fraudulent Conveyances.*   Where one executes a conveyance of real estate with intent to hinder, delay and defraud his creditors, equity will not compel a reconveyance in a suit by the grantor against the grantee, and the rule is the same where one pays the purchase money and procures the conveyance to a third person with such fraudulent intent.

3.      *In Pari Delicto.*   Equity will not interpose to determine a controversy between parties when they stand in pari delicto, and it is immaterial whether the fraud is disclosed by the pleadings or evidence.

4.      *Fraudulent Conveyances.*   If the intent to hinder and delay creditors constitutes a part of the cause for the execution of a conveyance of real property, the transaction is obnoxious to the statute.

5.  APPEAL AND ERROR—*Insufficient Evidence.*   Findings of the trial court that a conveyance of property was not made with the intent to hinder, delay or defraud creditors, held contrary to the evidence.

6.  FRAUD—*Mutual Misconduct.*   Where the misconduct of parties to a fraud is mutual, the law will not lend its aid to either, but will leave them in a position where they have placed themselves.

7.  EXECUTORS AND ADMINISTRATORS—*Fraudulent Conveyances.*   A court of equity affords no remedy to restore the title to the legal representatives of a decedent or to disturb the possession of property in the hands of his fraudulent grantee, for the benefit of his heirs.

*Error to the District Court of the City and County of Denver, Hon. Henry J. Hersey, Judge.*

Mr. Earl Wettengel, Mr. Andrew J. Reynolds, for plaintiffs in error.

Mr. Edwin H. Park, for defendant in error.

*Department Three.*

Mr. Justice. Whitford delivered the opinion of the court.

This suit was commenced by the plaintiff, Alwilda A. Huffaker, as administratrix of the Estate of John W. Huffaker, against Mary E. Southworth, J. S. Grable, Daniel B. Kirkman and the Tuxedo Investment Company, plaintiffs in error, to recover all of the shares of stock of the defendant company, as the property of the estate of John W. Huffaker, deceased, and praying for the appointment of a receiver, and for an accounting, and to have the stock in the hands of the individual defendants impounded in the registry of the court, and finally transferred to the plaintiff, as administratrix. From a decree in favor of the plaintiff, the defendants bring the case here for review on error.

The complaint alleges, in substance, that J. W. Huffaker died in May, 1923, and that the plaintiff, his widow, is the administratrix of his estate; that in 1920 the decedent caused to be incorporated the Tuxedo Investment Company, and that Southworth, Grable and Kirkman are the acting directors; that at the time of its organization the decedent caused to be transferred to said corporation all of his real estate, and particularly a large apartment house in Denver, known as the Tuxedo Apartment, as well as divers other pieces of real estate; that no other property than that exclusively and individually owned by Huffaker was ever transferred to said corpora-

tion, and that Huffaker thereby became the sole owner of all of the capital stock of the Tuxedo Investment Company; that the capital stock was fixed at $50,000, divided into 50,000 shares of one dollar each; that Huffaker caused to be issued one share of stock to each of the four incorporating directors, as qualifying shares, and caused the balance of the stock to be issued to defendant Southworth, as collateral security for a prior indebtedness due to her from decedent; that Huffaker was at all times the owner of all the property conveyed to the Tuxedo Investment Company, subject only to a mortgage of $25,000 upon said Tuxedo apartment; that during his lifetime deceased controlled and managed all of the affairs of the Tuxedo Investment Company; that Southworth was secretary and treasurer of the corporation; that since the death of Huffaker, Southworth has taken full charge and possession of said corporation, and has collected and received all income therefrom, and refuses to account to the plaintiff for the same; that Huffaker advanced to Southworth money, which, together with the rent for an apartment occupied by her, is more than sufficient to satisfy the indebtedness due to Southworth; that notwithstanding said indebtedness has been fully paid, Southworth and the board of directors refuse to turn over said stock and money to plaintiff as administratrix, and that the individual defendants have conspired to cheat and defraud the estate by withholding and refusing to transfer to the plaintiff the stock or account for the rents of the Tuxedo Investment Company.

Each of the defendants filed separate answers. The answers of defendants Grable and Kirkman are substantially the same, and consist of admissions and denials of the allegations of the complaint.

The first defense of defendant Southworth consists of specific denials and admissions, and alleges her ownership of the capital stock. The second defense alleged that a part of the real property standing in the name of the Tuxedo Investment Company was, prior to the organiza-

tion of said company, conveyed to her by one Epley, another piece by one Savage, and still another by the Orange County Investment Company, and that in 1920 she sold and conveyed all of said property to the Tuxedo Investment Company and received therefor 49,996 shares of its capital stock.

The third defense alleged that Huffaker had executed to her three promissory notes, one for $100 dated 1908, one for $500 dated 1908, and one for $6,000 dated 1918; that Huffaker was the owner of all of the real estate above described standing in her name; that Huffaker caused it to be conveyed to her as collateral security, and upon the organization of the Tuxedo Investment Company, he directed the stock to be issued to her as collateral security, in lieu of the fee title of the real estate.

The fourth defense alleged that all of the real estate which Huffaker caused to be conveyed to Southworth from Epley, Savage and the Orange County Investment Company, was purchased with the funds of Huffaker, and that he caused it all to be conveyed to Southworth for the purpose and with the intent of hindering, delaying and defrauding his creditors, and that it was voluntary and without any consideration from Southworth; that at the time of the said conveyance, Huffaker did not own in his own name any other property than that so conveyed to her, and that such conveyances rendered him insolvent and unable to pay his debts; that after the formation of said Tuxedo Investment Company, Huffaker retained possession of said property and conducted and managed the affairs of said corporation up to the time of his death.

The separate answer of the Tuxedo Investment Company, after making certain admissions and denials, alleged that it was the owner of all the real estate conveyed to it by defendant Southworth, and that at the time of the conveyances Huffaker was largely indebted and had judgment creditors and was involved in litigation and feared that other judgments would be obtained against

him, and for the purpose of concealing and hiding his assets, and to hinder, delay and defraud his creditors, caused said property now standing in the name of the Tuxedo Investment Company to be conveyed to Southworth, and by her transferred to the defendant corporation.

The plaintiff, in her reply to the answer of Southworth, alleged that at the time the conveyances were made to Southworth, and at the time of the organization of the Tuxedo Investment Company, Southworth was the private secretary and confidential agent and trustee of Huffaker, and that Huffaker paid the purchase price to the grantors of said several pieces of property and caused the same to be transferred directly from said grantor to Southworth, and thereafter caused her to transfer the same to the Tuxedo Investment Company; that the stock of said corporation was issued to Southworth solely and alone as collateral security for a pre-existing debt; admitted the execution of the note for $6,000, but denied any consideration therefor; that the Tuxedo apartment was purchased by Huffaker in July, 1908; that at said time Huffaker was indebted to the First National Bank of Denver in a large sum, and that he transferred said property by deed, as security for said indebtedness, to the Orange County Investment Company, which was a holding corporation for the First National Bank, and that said Orange County Investment Company held the title until September, 1915, when, upon the payment to the bank, at the request of Huffaker the Orange County Investment Company conveyed the same to Southworth. Plaintiff further alleged in her reply that Southworth is estopped, by reason of her admissions in her answer, to now claim or contend that she is the owner of any of said stock.

This lengthy statement of the averments of the pleadings seemed advisable, as the best means of intelligently presenting the issues attempted to be raised for review.

The parties will be designated here as in the court below.

The trial was to the court, upon depositions, testimony taken in another case, oral testimony and documentary evidence. The court made a general finding for the plaintiff and against all of the defendants, and entered an interlocutory decree ordering the appointment of a receiver and for an accounting before a referee. The court, upon objections to the report, modified and made additions to the findings of the referee, and entered a final decree in favor of the plaintiff and against all of the defendants.

It may be well to observe here, at the very outset, that the plaintiff, as administratrix or as heir at law, stands in decedent's shoes, and is in no better position than her intestate, if it shall appear that decedent caused the execution of the several conveyances to defendant Southworth, and caused Southworth to transfer the same to the Tuxedo Investment Company, with intent to hinder, delay and defraud his creditors. Wait on Fraudulent Conveyances, § 112; *Lathrop v. Pollard,* 6 Colo. 424, 427. It is elementary that, where one executes a conveyance of real estate to another with intent to hinder, delay and defraud his creditors, equity will not compel a reconveyance of the same in a suit by such fraudulent grantor against his grantee, and the rule is the same where one pays the purchase money and procures the conveyance from his grantor to a third person, with such fraudulent intent. *Lathrop v. Pollard, supra.*

Counsel for plaintiff contends that the defendant Southworth, having admitted in her answer that she held the real estate, and later the stock, of the Tuxedo Investment Company, as collateral security, and that she was the confidential agent and trustee of decedent, she is estopped from pleading fraud in her fourth defense, or giving evidence in support thereof. We cannot concur in this proposition urged by plaintiff. Equity so abhors fraud that the chancellor will not listen to litigants for

the purpose of judicially determining controversies between the parties where they stand in pari delicto. The verified averments of the fourth defense are in effect a challenge to the power of the court under the law to hear and determine the contentions arising from the mutual fraudulent conduct of the parties to such conveyances. The court could not judicially ignore the averments or refuse to take cognizance thereof. The alleged fraud was part of, and inseparably connected with, the transaction before the court. While a special plea of the fraud was unnecessary, it is immaterial whether the information of the fraudulent conduct of the parties in the transaction under investigation before the court came from the plaintiff or defendant, or was disclosed by the pleadings or the evidence. *Baker v. Couch,* 74 Colo. 380, 383, 221 Pac. 1089; *Branham v. Stallings,* 21 Colo. 211, 40 Pac. 396, 52 Am. St. Rep. 213. Whenever an illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. *Coppell v. Hall,* 7 Wall. 542, 548, 19 L. Ed. 244. The averments of the defendant Southworth that the conveyances to her of property by a deed absolute, and received and held by her as collateral security for the payment of two notes aggregating $600, is not inconsistent with the further averment that the conveyances were made for the purpose of hindering, delaying and defrauding creditors. If the intent to hinder and delay creditors constitutes a part of the cause for the execution of the conveyances, the transaction is obnoxious to the statute. *Baldwin v. Peet,* 22 Tex. 708, 716, 75 Am. Dec. 806.

The trial court found that ''there was at no time any intent or purpose by said J. W. Huffaker to hinder, delay or defraud any of his creditors or other persons, but that it was the intent and purpose of said decedent Huffaker to protect all his creditors.'' We think this finding is contrary to the evidence. The evidence and the admissions of record very clearly and unmistakably show a fraudulent and dishonest purpose, and that Huffaker

caused the conveyances to be executed with the intent to hinder and delay his creditors. Notwithstanding the court improperly excluded much competent evidence and offers of proof, consisting of claims of indebtedness, court records, judgments, executions, and declarations and testimony of the decedent denying his ownership of the property, tending to establish fraud, the record still discloses ample evidence to conclusively establish the fraudulent intent of both Huffaker and Southworth to hide and conceal his property, and to hinder, delay and defraud his creditors. Southworth's answer alleged her own turpitude, and this she cannot gainsay, and it is conclusive as to her guilty participation in the fraud. She testified that Huffaker made the conveyance to conceal his interest in the property. His brother Samuel testified that he knew the decedent had outstanding indebtedness at the time of the organization of the Tuxedo Investment Company, and that his brother had stated to him that the purpose of the conveyances from Southworth to the company was to keep the property together against the attack of individual creditors, and was to protect decedent from law suits by claimants, and from foreclosures, etc., against the property. Mrs. Savage testified that when she was about to sign the warranty deed for four lots in Colfax Heights purchased by Huffaker, she inquired of him why Southworth was named as grantee in the deed, and Huffaker replied that he was putting it in her name to protect himself, and for business reasons.

Southworth's relation to Huffaker is of significance. Southworth's brother married Huffaker's sister, and Huffaker's acquaintance with Southworth covered a period of more than twenty-five years. It is admitted that Southworth became his stenographer in 1905, and from that time until his death was his private secretary, confidential agent and trustee, and that three years after her employment he borrowed from her two sums of money without security, for which he executed one note

for $500, dated February 20, 1908, payable one year after date, at seven per cent per annum, and the other for $100, dated August 21, 1908, payable one day after date, at eight per cent per annum. It is claimed by Southworth that these notes were unpaid at the date of Huffaker's death in May, 1923. There is an endorsement on the $500 note April 20, 1911, of $25, an endorsement on the $100 note dated August 10, 1910, of $10, and November 15, 1913, of $25, and on May 9, 1914, of $5. The record discloses no demand for payment, although more than six years past due, when on September 23, 1915, Huffaker caused the Orange County Investment Company to convey to Southworth, by deed absolute, the property known as the Tuxedo apartment, valued at $75,000, with a rental income from $800 to $1,000 per month, which the complaint alleges and the answer admits was to be held as collateral security for the payment of the above described notes, although Southworth testified that she did not have any contract or agreement or understanding, either written or oral, with Doctor Huffaker that the property was to be conveyed to her as security, and that she had no knowledge of the transaction at the time the transfer was made. If true, as Southworth testified, why did he make a voluntary conveyance of valuable property to his private secretary, confidential agent and trustee? But assuming that it was made as collateral security, we find no reason or explanation in the record why it was necessary for Huffaker, in January, 1917, sixteen months after the conveyance of the Tuxedo apartment to Southworth, to cause Epley to convey to her by deed absolute, without her knowledge, additional valuable trackage property in the City and County of Denver, as further security for the two small notes. One year after the Epley transaction, in January, 1918, Huffaker executed a note to Southworth for $6,000, payable two years after date, at eight per cent per annum. This latter note was more than two years past due at the time of Huffaker's death, with no payment thereon either of

principal or interest. Southworth claims that the note was made in consideration for services rendered and to be rendered; plaintiff claims that the note was without consideration; and the court found, in its final decree, that the note was without consideration, and that it was utterly null and void; witness Abbott, who was Huffaker's attorney at the time of the execution of the note, testified that it was without consideration, and that Huffaker stated to him that the note was given so that Southworth could exhibit the note in case of any unfavorable litigation, and show that she was holding the property in trust until the note was paid. In March following the execution of the six thousand dollar note, Huffaker caused Mrs. Savage to convey to Southworth the four lots in Colfax Heights, mentioned above, which Southworth claims were to be held as additional collateral security for the payment of her three notes. In March, 1916, Huffaker caused Fred G. and Charlotte Moffat to convey to Southworth certain lots and acreage property situated in Cincinnati, Ohio. In December, 1916, Huffaker caused E. R. and A. E. Anderson to convey by deed absolute to Southworth, without her knowledge, 640 acres of land situated in Terrell County, Texas.

It is admitted that on May 3, 1920, Huffaker caused to be incorporated the Tuxedo Investment Company, through the co-operation of Southworth, Kirkman, Grable and Cutler, who became the official incorporators. Each of the incorporators subscribed for one share of the stock, for which no consideration was paid. The absence of Huffaker's name from the articles of incorporation and the organization minutes and the subsequent minutes, is significant of his secrecy and his concealment of ownership, and especially when it is admitted that he was the master mind and caused everything to be done that was done. The organization minutes show that after electing Southworth secretary and treasurer, and the other corporate officers, Southworth proposed in writing to transfer to the corporation the Tuxedo apartment, the

Epley trackage property and the Savage lots in Colfax Heights, in consideration of the Tuxedo Investment Company issuing to her the remaining 49,996 of the 50,000 shares of the capital stock of the company, which was unanimously adopted. The stock was issued to her, and the deed, subject to existing mortgages, was executed, delivered and recorded. The minutes authorized Southworth to sign all checks, drafts and instruments requiring the signature of the company. It was her practice thereafter to sign the company's name, by herself as treasurer, to checks in blank in a check book which she delivered to Huffaker for his personal use, and this practice continued to the time of his death. Southworth accounted to him for all income from these properties, and Huffaker checked on the company's bank account, using the blank checks previously signed by Southworth as treasurer, for any and all purposes, without any action whatever by the corporation. He gave receipts and notices and signed letters in her name, by himself as her agent; he was financially embarrassed for many years prior and subsequent to the organization of the Tuxedo Investment Company; he had numerous debts many years past due, with no property in his name; he was indebted for rent, fuel, labor, building material, borrowed money, overdue notes, interest and taxes of many years standing, as well as unsatisfied judgments; he was several thousand dollars in arrears in his interest and taxes on the mortgage of $25,000, owned by the Iliff School of Theology, on the Tuxedo apartment, and in 1919 the mortgagee, in self protection, was compelled to pay $2,900 to redeem the property from tax sales, to avoid the issuance of a tax deed thereon; he was in constant litigation; judgment creditors of many years standing were unable, after diligent search of the record, to discover property upon which to levy executions. Huffaker had no property standing in his name out of which creditors could enforce satisfaction. The evidence establishes his insolvency beyond all reasonable doubt. He

concealed all of his property in the name of the defendant Southworth and in the Tuxedo Investment Company, with Southworth's consent and active co-operation, thereby secretly securing to himself its exlusive use and the enjoyment of all the income arising therefrom. It has been said that "collusive transfer, placing the property of a debtor out of the reach of his creditors, while securing to him its beneficial enjoyment, is not to be tolerated." *Crawford v. Neal*, 144 U. S. 595, 12 Sup. Ct. 762, 36 L. Ed. 552. The collusive acts of Huffaker and Southworth to conceal and cover up the evidence of his ownership, inevitably had the tendency and effect of hindering, delaying and defrauding creditors, and was so plainly and clearly violative of all moral duty of honesty, fair dealing and integrity, that neither Southworth's nor Huffaker's heirs or representatives can come into a court of equity with clean hands and ask its chancellor to listen to their controversies arising out of their mutual fraudulent conduct. Where the misconduct is mutual, the law will not lend its aid to either, and will leave the parties in the position where they have placed themselves. A court of equity affords no remedy to restore the title to decedent's representative or to disturb the possession in the hands of his fraudulent grantee for the benefit of his heirs. The trial court should have dismissed the complaint.

The judgment is therefore reversed and the cause remanded to the district court, with directions to dismiss the action, each party paying their own costs.

Mr. Chief Justice Allen and Mr. Justice Campbell concur.